**William and Diane CLARK, Appellants–Plaintiffs,**

v.

**James P. CROWE, et al, Appellees– Defendants.**

**No. 32A01–0201–CV–3.**

Court of Appeals of Indiana.

Nov. 20, 2002.

---

Thomas W. Vander Luitgaren, Van Valer Law Firm, Greenwood, IN, Attorney for Appellant.

Loren J. Comstock, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

William and Diane Clark ("the Clarks") appeal the negative judgment of the Hendricks Circuit Court on their Motion to Enforce Settlement Agreement and the judgment in favor of Robert Vondersaar, Sr. and Robert Vondersaar, Jr. ("the Vondersaars") on their Complaint to Reform Deed. We affirm the negative judgment on the Clarks' complaint and reverse the judgment on the Vondersaars' reformation claim.

### Issues

The Clarks present seven issues for review, which we restate as follows:

I. Whether the Vondersaars were estopped from disputing the location of the property line as contemplated by the Settlement Agreement after the Clarks erected a fence;

II. Whether the trial court erroneously disregarded the Schneider Survey commissioned by the parties' agreement in order to resolve prior litigation;

III. Whether the trial court mischaracterized Diane Clark's testimony in an erroneous finding of fact;

IV. Whether the trial court erroneously failed to order the Vondersaars to remove a portion of their driveway allegedly encroaching onto the Clarks' property;

V. Whether the trial court erroneously interpreted the Settlement Agreement with regard to drainage;

VI. Whether the trial court erroneously failed to address the Clarks' claim that the Vondersaars placed impediments in the drainage easement; and

VII. Whether the trial court erroneously ordered the deed reformed.

**Facts and Procedural History**

On September 3, 1998, the Clarks filed a quiet title action against fifteen neighbors. As a result of mediation, on December 30, 1999, the Clarks, Robert Vondersaar Sr. ("Vondersaar Sr."), and several other defendants who are not active parties to this appeal, executed a Settlement Agreement and Release ("the Settlement"). The Settlement provided in pertinent part:

1. The Clarks agree to sell to Vondersaar Sr. and Vondersaar Sr. agrees to buy from the Clarks a strip of land twelve (12) feet wide ("Strip") along the entire southeast edge of the Clark's Real Estate subject to all restrictions and easements of record (The Clark's Real Estate after transfer of the Strip shall be referred to as the "Clark's Remaining Real Estate"). The Strip shall be conveyed by quitclaim deed in the form attached hereto as Exhibit B.

2. No part of the Private Drive, including but not limited to, any gravel, retention or support elements, shall, now or in the future, encroach on the Clark's Remaining Real Estate. No easements or any other property rights/interests, in any way related to the Private Drive, exist with regard to the Clark's Remaining Real Estate. . . .

3. Vondersaar Sr. agrees to remove, from the Clark's Remaining Real Estate and to the ground level of the Clark's Remaining Real Estate, any and all parts of the Private Drive which may currently encroach on the Clark's Remaining Real Estate, including but not limited to, gravel, retention or support elements, on or before April 15, 2000.

4. Vondersaar Sr. shall pay to the Clarks Six Thousand Dollars ($6,000.00), the receipt of which is hereby acknowledged by the Clarks.

5. The parties stipulate and agree that a mutual drain exists from the Clark Real Estate, under a certain portion [of] the Private Drive, through the Strip, and under property owned by Vondersaar Sr. Vondersaar Sr. and the Clarks acknowledge that an existing fourteen to sixteen inch (14″ to 16″) drainage pipe ("Pipe") is located under the Private Drive and under property owned by Vondersaar Sr. draining at a creek on property owned by Vondersaar Sr. Vondersaar Sr. grants to the Clarks a drainage easement under the Private Drive, through the Strip, and over property owned by Vondersaar Sr. in the form attached hereto as Exhibit C. Vondersaar Sr. shall initially remove, or cause to be removed, any obstructions from the Pipe which prevent drainage from the Clark's property.

6. The Parties consent to the construction of a fence by the Clarks on the

Clark's Remaining Real Estate along the Private Drive. No part of the fence, including but not limited to retention or support elements, shall encroach on the Strip.

(App. 21–3.) Thus, the primary objectives of the Settlement were to permit Vondersaar Sr. to acquire the land on which his private driveway was to be located, to permit the Clarks to erect a privacy fence and to facilitate drainage from the Clarks' property.[1] The parties also executed a separate Easement Agreement, which provided in pertinent part that the Clarks could, at their sole option and expense, maintain the drainage pipe, and obligated Vondersaar Sr. to maintain the outlet portion of the pipe and keep the area clear of debris.

The parties commissioned a survey to be used to prepare a legal description for the conveyance of a quitclaim deed transferring a 12–foot strip from the Clarks to Vondersaar Sr. and for the location of a new driveway within a mutual easement (hereinafter "the Schneider Survey"). After Vondersaar Sr. sold his property on contract to his son, Vondersaar Jr., and the instant litigation was commenced, the Vondersaars commissioned Lewis Engineering to determine whether the Clarks' fence was located outside a twelve-foot strip commencing from the Vondersaars' former property line. The Lewis Engineering report concluded that the fence was entirely within twelve feet of the Vondersaars' old property line.

On January 31, 2001, the Clarks filed a complaint to enforce the Settlement provisions, which alleged that the Vondersaars had failed to abide by their obligations under the Settlement, allowed their driveway to encroach upon the Clarks' property, failed to excavate the driveway to ground level and failed to remove the obstructions to the drainage pipe. On March 7, 2001, the Vondersaars filed their response and counterclaim, seeking to have the quitclaim deed reformed. Trial was held on October 23, 2001. On November 27, 2001, the trial court issued findings of fact and conclusions of law, which provided that the Clarks' privacy fence was on land the Clarks had agreed to deed to Vondersaar Sr., Vondersaar Sr. had not failed to remove obstructions from the drainage ditch, and the Quit Claim Deed premised on the Schneider Survey did not convey the entire twelve-foot strip which Vondersaar Sr. was to have received. The trial court determined that the Clarks breached the Settlement and ordered removal of the fence and reformation of the deed. The Clarks now appeal.

**Discussion and Decision**

*I. Standard of Review*

Where a party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Cutshall v. Barker,* 733 N.E.2d 973, 978 (Ind.Ct.App.2000). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

When the trial court has entered findings of fact and conclusions of law upon the request of a party, pursuant to Indiana Trial Rule 52, we apply the following two-tier standard of review: whether the evidence supports the findings and whether the findings support the judgment. *CSX Transp., Inc. v. Rabold,* 691 N.E.2d 1275, 1277 (Ind.Ct.App.1998). The

---

1. The drainpipe referenced in the Settlement ran from the Clarks' property, under a private drive, through Vondersaar Sr.'s property and into a creek. (Tr. 5.)

court's findings and conclusions will be set aside only if they are clearly erroneous, that is, that the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Ahuja v. Lynco Ltd. Medical Research,* 675 N.E.2d 704, 707 (Ind.Ct. App.1996).

## II. Estoppel

██ The Clarks contend that the trial court's judgment is contrary to law because when owners of adjoining property agree to their boundary, and possess and improve the premises in accordance with that agreement, absent fraud, both parties are then estopped from disputing the boundary. They rely upon *Adams v. Betz,* 167 Ind. 161, 78 N.E. 649, 652 (1906).

██ The doctrine of equitable estoppel generally involves misrepresentation and detrimental reliance, but is not strictly limited to circumstances involving an actual false representation or concealment of existing fact. *Paramo v. Edwards,* 563 N.E.2d 595, 598 (Ind.1990). However, where persons stand on equal footing and in no fiduciary relationship, the law will not protect one who fails to exercise common sense and judgment. *Id.* at 599. The elements of equitable estoppel are: (1) a representation or concealment of a material fact, (2) made by a person with knowledge of the fact and with the intention that the other party act upon it, (3) to a party ignorant of the fact, (4) which induces the other party to rely or act upon it to his detriment. *Wabash Grain, Inc. v. Smith,* 700 N.E.2d 234, 237 (Ind.Ct.App.1998). Here, there is no superior knowledge by one party and no concealment. As such,

the Clarks' contention does not fall squarely within an equitable estoppel theory. However, there is long-standing legal authority for the Clarks' position:

> As a general rule, it is affirmed by the authorities that where owners of adjoining premises establish by agreement a boundary or dividing line between their lands, take and hold possession of their respective tracts, and improve the same in accordance with such division, each party, in the absence of fraud, will thereafter be estopped from asserting that the line so agreed upon and established is not the true boundary line, although the period of time which has elapsed since such line was established and possession taken is less than the statutory period of limitation [for adverse possession].

*Adams,* 78 N.E. at 652. The parties here, with equal access to pertinent information, agreed to set the boundary dividing their respective properties in accordance with the Schneider Survey. The Clarks subsequently erected an improvement, a privacy fence, at substantial cost. We agree with the Clarks that, under these circumstances, the Vondersaars are estopped from a boundary challenge subsequent to the Clarks' improvement erected without objection. For reasons discussed hereinafter, we conclude that the appropriate theory is that of judicial estoppel.

## III. Reliance on Lewis Survey

██ The Clarks challenge Conclusions of Law 6 and 7, which provide:

> The privacy fence erected by the Plaintiffs and the privacy fence support post are located within the "twelve (12) feet wide ("Strip") along the southeast edge of the Clarks' Real Estate" that Plaintiff contracted to deed to Defendant. And therefore, Plaintiff has violated para-

graph 6 of the Settlement Agreement and Release.

The quitclaim deed drawn from the description contained in the Schneider Engineering survey (Exhibit "F") did not convey "a strip of land twelve (12) feet wide ... along the entire southeast edge of the Clark's Real Estate." (Exhibit 22). Plaintiffs have breached the settlement agreement in that they did not convey to Defendant, Vondersaar, Sr., the land agreed to be conveyed under paragraph 1 of the Settlement Agreement and Release.

(App. 67.) These Conclusions are predicated upon the accuracy of the Lewis Engineering Inc. survey, which determined that the Clarks' fence was located from 11.1 feet to 11.39 feet from the original Vondersaar property line, rather than the twelve feet contemplated by the Settlement.[2] The Clarks contend that Vondersaar Sr. could not by a subsequent survey challenge a portion of the Settlement to which he was a party and that the trial court was constrained to resolve any contradiction by crediting the Schneider Survey because it was commissioned at the instance of both parties and adopted in the settlement of their prior legal dispute. Essentially, the Clarks raise a judicial estoppel argument.

 Judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *Wabash*, 700 N.E.2d at 237. In contrast to equitable estoppel, which focuses on the relationship between the parties and involves a representation or concealment by one with knowledge to one without such knowledge, judicial estoppel focuses on the relationship between a litigant and the judicial system. *Id.* at 237–38. The purpose of judicial estoppel is to protect the integrity of the judicial process rather than to protect litigants from allegedly improper conduct by their adversaries. *Id.*

We find the doctrine of judicial estoppel to be applicable here. In essence, Vondersaar Sr. now complains of error in the litigation settlement process despite his earlier agreement. It is uncontroverted that the Schneider Engineering surveyor was commissioned to assist in the resolution of litigation between these parties and the surveyor showed all parties the boundaries. No objection was raised, and each party entered into the Settlement premised upon the survey, with each party assuming without challenge that the legal description in the settlement documents referred to a twelve-foot strip of land. It would be both inequitable and contrary to law to require removal of the Clarks' fence, which even by Lewis Engineering estimates is located 11.11 to 11.39 feet from the old Vondersaar property line.[3]

---

2. The Clarks stipulated to the admissibility, but not the accuracy or probative value, of the Lewis Engineering Survey, Defendant's Exhibit 26.

3. At trial, Vondersaar Jr., the current owner/occupant of the property next to the Clarks' fence, testified that he was not requesting an order that the fence be torn down. (Tr. 100.) However, the trial court's Findings, Conclusions and Judgment incorporated an order for the removal of the fence within 30 days of the trial court's order. It appears that the granting of relief not requested at trial resulted from the trial court's adoption of proposed findings and conclusions. Trial Rule 52(C) encourages the trial court to request the parties to submit proposed findings of fact and conclusions of law and it is not uncommon or *per se* improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. *A.F. v. Marion Co. OFC*, 762 N.E.2d 1244, 1249 (Ind. Ct.App.2002), *trans. denied.* However, we urge the trial courts to scrutinize these submissions for mischaracterized testimony and legal argument rather than the findings of fact

The variance from the anticipated 12 feet is "de minimus." The fence was erected at substantial cost, with the acquiescence of Vondersaar Sr., and in reliance upon the Settlement incorporating the Schneider Survey. The trial court erred in relying upon the Lewis Engineering Survey to contradict the position earlier taken by the parties to the litigation.

### IV. Testimony of Diane Clark

Our resolution of the estoppel issues makes it unnecessary to address the Clarks' next contention of error. However, we observe that the challenged Finding of Fact 17 blatantly mischaracterizes Diane Clark's testimony. Finding 17 provides:

> Mrs. Clark, on cross-examination, testified that the property line was "off a little bit" from the required 12 foot widths specified to be deeded by Clarks to Vondersaar under paragraph 1 of the Settlement Agreement.

No such testimony was elicited during cross-examination. During direct examination, Diane Clark was asked: "Your understanding that the work done by the Schneider Corporation and the work by, done by the Lewis Engineering with respect to the property line was off a little bit?" and she responded: "Yes it was." (Tr. 34.) Taken in context with the preceding questions (during which the witness was asked to examine survey exhibits) and the succeeding questions, it is clear that Diane Clark was testifying that, in a comparison of the surveys, they were "a little off." In essence, as acknowledged by all parties, there was a discrepancy between reports. No portion of Diane Clark's testimony supports a finding of fact that she testified to the inaccuracy of a property line.

and conclusions of law as contemplated by

### V. Driveway Encroachment

The Clarks contend that the trial court should have ordered the removal of any encroaching portion of the Vondersaar driveway. The Clarks had the burden of proof on the allegation of driveway encroachment and appeal a negative judgment. We reverse only if the evidence leads to a single conclusion, contrary to that reached by the trial court. *Cutshall*, 733 N.E.2d at 978. Diane Clark testified that the Vondersaars' wooden railroad ties (shown parallel to the driveway in photographs) encroached upon her property. Vondersaar Jr. testified that his driveway did not encroach on the Clark property. As such, the evidence did not lead to a single conclusion contrary to that reached by the trial court.

### VI. Interpretation of Drainage Provision

Next, the Clarks contend that the trial court erroneously interpreted the drainage provision of the Settlement. However, the thrust of their argument is that the trial court could not properly have found that the Vondersaars complied with the obstruction removal requirement of the Settlement in light of the evidence that drainage problems were continuous. The Vondersaars testified that they removed initial obstructions from the drainpipe, as dictated by the Settlement terms. Diane Clark testified that the Vondersaars removed nothing from the drainpipe. On appeal, the Clarks contend that "the trial court erred in its determination that the Vondersaars complied with their obligation to remove the obstruction from the drainpipe." Appellant's Brief at 20. Essentially, the Clarks invite this Court to reweigh the evidence. We decline to do so.

the rule.

### VII. Alleged Interference with Drainage Easement

■ Next, the Clarks claim the trial court erred in failing to order the Vondersaars to refrain from impeding the drainage easement. The Clarks contend that the Vondersaars placed a dog pen, boulders and dirt in the area of the drainage easement "probably in an intentional effort to prevent the Clarks from exercising their rights in relation to the drainage easement." Appellant's Brief at 22. Diane Clark testified that the Vondersaars brought the aforementioned items into the easement area near the drainpipe. However, the record is devoid of evidence that this caused a drainpipe blockage or any interference with the Clarks' right to utilize the easement to maintain the drainpipe. Therefore, the omission of a restraining order against the Vondersaars is not error.

### VIII. Reformation of Quit Claim Deed

■ Finally, the Clarks contend that the Vondersaars have not established, by clear and convincing evidence, their entitlement to the extreme equitable remedy of reformation of the quitclaim deed. We agree that the trial court erred as a matter of law in finding, by a preponderance of the evidence [Conclusion of Law 2], that the Vondersaars are entitled to reformation. See Estate of Reasor v. Putnam County, 635 N.E.2d 153, 160 (Ind.1994) (holding that reformation is an extreme equitable remedy available only when a party shows either mutual mistake or fraud by clear and convincing evidence and that findings as to reformation based upon a preponderance of the evidence standard are clearly erroneous). Here, the parties agreed, during earlier litigation involving the subject property, that they would rely upon the Schneider Survey and transfer property according to the legal description compiled as a part of the Settlement. In reliance thereon, the Clarks erected a fence that may be located slightly within twelve feet of the Vondersaars' old property line. Nevertheless, although having an opportunity to verify the accuracy of the Schneider survey and legal description prior to entering into the binding Settlement, Vondersaar Sr. failed to do so. He and his successor cannot later complain, after representing to the court that the land dispute was settled and property appropriately conveyed, that they are entitled to equitable relief. Moreover, the trial court erroneously failed to require proof by clear and convincing evidence.

### Conclusion

In light of the foregoing, we affirm the adverse judgment of the trial court on the Clarks' Motion to Enforce Settlement Agreement. We reverse the trial court's judgment on the Vondersaars' Complaint to Reform Deed.

Affirmed in part; reversed in part.

SULLIVAN, J., and MATHIAS, J., concur.