Gary WEST, et al.,
Appellants/Remonstrators,

v.

THE CITY OF PRINCETON,
Appellee/Respondent.

No. 26A01–0806–CV–280.

Court of Appeals of Indiana.

March 3, 2009.

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellants.

Jerry D. Stilwell, Bamberger, Foreman, Oswald and Hahn, LLP, Princeton, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellants/Remonstrators Gary West, *et al.,* ("Appellants") appeal from the trial court's denial of their motion for summary judgment and its judgment in favor of Appellee/Respondent the City of Princeton. Appellants contend that the trial court erred in denying their summary judgment motion because Princeton allegedly failed to strictly comply with the relevant notice statute. Moreover, Appellants contend that the trial court's judgment is clearly erroneous in several respects. We affirm the judgment of the trial court and its denial of Appellants' summary judgment motion.

## FACTS AND PROCEDURAL HISTORY

On August 15, 2005, the Princeton Common Council introduced and heard the first reading of an ordinance providing for the annexation of part of the Northbrook Hills area ("the Parcel"). The Parcel is mostly residential, shares a border with Princeton, has an area of approximately seventy-three acres, and had a population of nine-

ty-four in August of 2005. The Common Council adopted the annexation ordinance and set the matter for public hearing. On August 17, 2005, a notice was sent by certified mail to all affected property owners in Northbrook Hills informing them of the public meeting discussing the proposed annexation on October 24, 2005. A public meeting was held on October 24, 2005, at which several Northbrook Hills residents appeared and were represented by counsel. On December 19, 2005, the ordinance was read a second and final time and approved by the Common Council by a 5–0 vote.

On February 16, 2006, Appellants, representing more than sixty-five percent of the property owners, and who owned more than seventy-five percent of the assessed value of the Parcel, filed a timely remonstrance action. On January 31, 2007, Appellants filed a motion for summary judgment. On March 30, 2007, the trial court denied the Appellants' motion for summary judgment. On January 28, 2008, a bench trial was held. On May 16, 2008, the trial court entered its findings of fact and conclusions thereon, ruling in favor of Princeton.

## DISCUSSION AND DECISION

### I. Strict Compliance with Annexation Statutes

Appellants contend that the trial court erred in denying its motion for summary judgment. When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 386 (Ind.Ct.App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact

and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.* This court may review the denial of a pretrial motion for summary judgment even after final judgment has been entered. *See Keith v. Mendus,* 661 N.E.2d 26, 35 (Ind.Ct.App.1996), *trans. denied.*

### A. Indiana Code Section 36–4–3–2.2(c)(5)

Appellants contend that Princeton failed to strictly comply with statutory notice requirements and that they should have been granted summary judgment on that basis. Indiana Code section 36–4–3–2.2 provides in part as follows:

(b) Before a municipality may annex territory, the municipality shall provide written notice of the hearing required under section 2.1 of this chapter. Except as provided in subsection (e), the notice must be sent by certified mail at least sixty (60) days before the date of the hearing to each owner of real property, as shown on the county auditor's current tax list, whose real property is located within the territory proposed to be annexed.

(c) The notice required by this section must include the following:

(1) A legal description of the real property proposed to be annexed.

(2) The date, time, location, and subject of the hearing.

(3) A map showing the current municipal boundaries and the proposed municipal boundaries.

(4) Current zoning classifications for the area proposed to be annexed and any proposed zoning changes for the area proposed to be annexed.

(5) A detailed summary of the fiscal plan described in section 13 of this chapter.

(6) The location where the public may inspect and copy the fiscal plan.

(7) A statement that the municipality will provide a copy of the fiscal plan after the fiscal plan is adopted immediately to any landowner in the annexed territory who requests a copy.

(8) The name and telephone number of a representative of the municipality who may be contacted for further information.

Appellants contend only that Princeton failed to include a detailed summary of the fiscal plan. The notice sent to the Parcel's landowners on August 17, 2005, provided, in part, as follows:

A Fiscal Plan had been approved by the Common Council of the City of Princeton. Under the terms of the Fiscal Plan, the City of Princeton proposes to commence providing police, fire and trash pickup on March 1, 2006. All dedicated streets and roads within the annexation area will be maintained by the City of Princeton commencing March 1, 2006. Annexation area property owners will not pay property taxes to the City until the 2006 assessment, payable in 2007. Residents of the area will be assigned to City Council District No. 1. You may inspect a copy of the Fiscal Plan at the Office of the Clerk–Treasurer, City of Princeton, Princeton Municipal Building, and a copy of the fiscal plan will be provided to you if you request a copy.

Appellant's App. p. 233.

The question, then, is whether the above constitutes a "detailed summary"[1] of the fiscal plan.

The interpretation of a statute is a question of law for the courts and is reviewed under a *de novo* standard. The rules of statutory construction require courts to give the words of a statute their plain and ordinary meaning unless the statute otherwise provides definitions, or unless the construction is plainly repugnant to the intent of the legislature. However, if a statute is susceptible to more than one interpretation, it is ambiguous. If a statute is ambiguous, then courts must give effect, and implement the intent of the legislature. In doing so, courts must examine the whole statute and not give too much meaning to any particular word or words in isolation, but should extract the purpose of the legislation and avoid an unjust or absurd result. *Ind. Bureau of Motor Vehicles v. Orange*, 889 N.E.2d 388, 390 (Ind.Ct.App.2008) (citations and quotation marks omitted).

---

1. The legislature did not define "detailed summary" in this context. In most such instances, we would interpret the phrase according to its plain and ordinary meaning. "Detailed" may be defined as "marked by abundant detail or thoroughness in treating small items or parts[,]" while "summary" may be defined as "a short restatement of the main points (as of an argument) for easier remembering, for better understanding, or for showing the relation of the points[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 616, 2289 (Phillip Babcock Gove et al. eds., G. & C. Merriam Company 1964). In our view, however, the precise meaning of "detailed summary" will vary greatly depending on context, rendering dictionary definitions of limited use.

The clear purpose of the legislation in question is to put the affected landowners on notice of the municipality's proposed annexation of their land and its consequences. It follows, then, that the detailed summary need only be detailed enough to further that purpose. Here, the detailed summary has done so. The detailed summary informs the landowners when police, fire, and trash services and road maintenance would begin, when they would have to start paying property taxes to Princeton, and to which Princeton Common Council district residents would belong.[2] Moreover, the notice also tells affected landowners where they may inspect a copy of the full fiscal plan and that they will be sent a copy upon request. Finally, Appellants make no claim that they were denied access to the full fiscal plan, nor do they explain how, even if that were the case, such a denial would have affected their knowledge of the proposed annexation or their opportunity to be heard. "It is commonly understood that procedural due process includes notice and an opportunity to be heard." *Trigg v. Al–Khazali*, 881 N.E.2d 699, 702 (Ind.Ct.App.2008). We conclude that the detailed summary here satisfied the requirements of Indiana Code section 36–4–3–2.2(c)(5).[3]

## II. Whether the Trial Court's Judgment was Clearly Erroneous

Appellants contend that the trial court failed to conform its judgment to the requirements of Indiana Code section 36–4–3–13, which governs the approval or denial of a proposed annexation in the face of a challenge. When the trial court enters findings of fact and conclusions thereon, we apply the following two-tiered standard of review: we determine whether the evidence supports the findings and the findings support the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind.Ct.App. 2002). The trial court's findings of fact and conclusions thereon will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* at 839–40. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* at 840. This court neither reweighs the evidence nor assesses the credibility of witnesses, but considers only the evidence most favorable to the judgment. *Id.*

Indiana Code section 36–4–3–13 provides, in part, as follows:

(a) Except as provided in subsections (e) and (g), at the hearing under section 12 of this chapter, the court shall order a proposed annexation to take place if the following requirements are met:

(1) The requirements of either subsection (b) or (c).

(2) The requirements of subsection (d).

(b) The requirements of this subsection are met if the evidence establishes the following:

---

2. Perhaps the better practice would be to include a brief summary of the projected financial impact on the affected landowners with respect to increased property taxes, but at least in this case, the absence of such information does not render the notice insufficient. The detailed summary advised landowners that they would begin paying property taxes to Princeton, from which it may reasonably be inferred that their overall tax liability would increase.

3. Because we have concluded that Princeton has complied with Indiana Code section 36–4–3–2–2, we need not address Appellants' argument that "substantive" compliance with the statute is inadequate and that only "strict" compliance is sufficient.

(1) That the territory sought to be annexed is contiguous to the municipality.

(2) One (1) of the following:

(A) The resident population density of the territory sought to be annexed is at least three (3) persons per acre.

(B) Sixty percent (60%) of the territory is subdivided.

C) The territory is zoned for commercial, business, or industrial uses.

(c) The requirements of this subsection are met if the evidence establishes the following:

(1) That the territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter, except that at least one-fourth (1/4), instead of one-eighth (1/8), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality.

(2) That the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future.

(d) The requirements of this subsection are met if the evidence establishes that the municipality has developed and adopted a written fiscal plan and has established a definite policy, by resolution of the legislative body as set forth in section 3.1 of this chapter. The fiscal plan must show the following:

(1) The cost estimates of planned services to be furnished to the territory to be annexed. The plan must present itemized estimated costs for each municipal department or agency.

(2) The method or methods of financing the planned services. The plan must explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used.

(3) The plan for the organization and extension of services. The plan must detail the specific services that will be provided and the dates the services will begin.

(4) That planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries regardless of similar topography, patterns of land use, and population density.

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation in the same manner as those services are provided to areas within the corporate boundaries, regardless of similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

(e) At the hearing under section 12 of this chapter, the court shall do the following:

(1) Consider evidence on the conditions listed in subdivision (2).

(2) Order a proposed annexation not to take place if the court finds that all of the conditions set forth in clauses (A) through (D) and, if applicable, clause (E) exist in the territory proposed to be annexed:

(A) The following services are adequately furnished by a provider other than the municipality seeking the annexation:

(i) Police and fire protection.

(ii) Street and road maintenance.

(B) The annexation will have a significant financial impact on the residents or owners of land.

(C) The annexation is not in the best interests of the owners of land in the territory proposed to be annexed as set forth in subsection (f).

(D) One (1) of the following opposes the annexation:

(i) At least sixty-five percent (65%) of the owners of land in the territory proposed to be annexed.

(ii) The owners of more than seventy-five percent (75%) in assessed valuation of the land in the territory proposed to be annexed.

Evidence of opposition may be expressed by any owner of land in the territory proposed to be annexed.

(E) This clause applies only to an annexation in which eighty percent (80%) of the boundary of the territory proposed to be annexed is contiguous to the municipality and the territory consists of not more than one hundred (100) parcels. At least seventy-five percent (75%) of the owners of land in the territory proposed to be annexed oppose the annexation as determined under section 11(b) of this chapter.

(f) The municipality under subsection (e)(2)(C) bears the burden of proving that the annexation is in the best interests of the owners of land in the territory proposed to be annexed. In determining this issue, the court may consider whether the municipality has extended sewer or water services to the entire territory to be annexed:

(1) within the three (3) years preceding the date of the introduction of the annexation ordinance; or

(2) under a contract in lieu of annexation entered into under IC 36–4–3–21.

The court may not consider the provision of water services as a result of an order by the Indiana utility regulatory commission to constitute the provision of water services to the territory to be annexed.

Appellants make three separate challenges to the trial court's judgment: (A) the evidence established all of the requirements of subsection (e) and therefore the trial court should have concluded that the annexation should not take place; (B) Princeton failed to establish certain elements of subsection (d) regarding information required to be in the fiscal plan, and the trial court erroneously concluded otherwise; and (C) Princeton was required to establish that its annexation of the parcel was not solely for the purpose of generating revenue, and the trial court erred in failing to make such a finding.

## A. Whether the Trial Court Erred in Concluding that the Evidence did not Establish Subsection (e)

Appellants contend that clauses (A) through (E) of subsection 36–4–3–13(e) were all established by the evidence, thereby requiring the trial court to stop the

annexation. The plain language of the statute provides that all five clauses must be established before the trial court is required to stop the annexation. While Appellants argue that clauses (A), (B), (D), and (E) were established, they fail to make an argument regarding clause (C), so we need not address the issue further. *See Indiana Ins. Guar. Ass'n v. Blickensderfer,* 778 N.E.2d 439, 442 (Ind.Ct.App.2002) ("Where the language of the statute is clear and unambiguous, there is nothing to construe.").

## B. Whether Sufficient Evidence Exists to Permit a Conclusion that Subsection (d) was Satisfied

■ Appellants contend that the trial court erred in concluding that the requirements of subsection 36–4–3–13(d) were satisfied. As previously mentioned, subsection (d) requires, in relevant part, as follows:

> The fiscal plan must show the following:
>
> (1) The cost estimates of planned services to be furnished to the territory to be annexed. The plan must present itemized estimated costs for each municipal department or agency.
>
> (2) The method or methods of financing the planned services. The plan must explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used.

Appellants contend that no data concerning these items appear in the fiscal plan and that no evidence was presented at trial bearing on these questions. Our review of the record reveals otherwise. For water, wastewater, storm water and drainage, street lighting, police, fire, emergency medical, and non-capital street maintenance (e.g., snow removal) services, the fiscal plan specifically notes that these would all be provided to the Parcel without additional cost to Princeton. Consequently, the fiscal plan need not include either itemized costs or methods for financing these services. For solid waste removal service, the fiscal plan provides that Princeton would charge each household six dollars per month, which would be adequate to cover any additional costs incurred.

Finally, as for capital street maintenance, the fiscal plan provides that this would be "the responsibility of the appropriate developer in accordance with the City Code." Appellant's App. p. 105. At trial, Princeton street and sewer superintendent Charles Woodruff testified that the approximately 1.7 miles of roadway in the parcel were unfinished, specifically in need of a "surface layer that has not been put down[,]" and that he "assume[d]" that Princeton would apply the surface layer in the event of annexation. Tr. p. 139. Woodruff also testified that the approximately $100,000.00 cost of the surface layer would come from Princeton's "normal yearly budget for roads and maintenance." Tr. p. 139. We conclude that this evidence is sufficient to establish which agency would be responsible for the surface layer and how it would be funded. The trial court did not err in concluding that subsection 36–4–3–13(d) was satisfied.

## C. Whether Princeton was Required to Establish that the Annexation of the Parcel was not Solely for Revenue Generation

■ Appellants contend that Princeton failed to establish that the annexation was not solely for the purpose of revenue generation and claim that annexation cannot occur under such circumstances. We have concluded, however, that this proposition is

only relevant when the municipality is attempting to annex pursuant to subsection 36–4–3–13(c), and it is undisputed that Princeton satisfied subsection 36–4–3–13(b). *In the Matter of Annexation Ordinance No. X–07–91 (Blackhawk Annexation)*, 645 N.E.2d 650, 656 (Ind.Ct.App. 1995), *trans. denied.* As we have noted, "[a]n annexing municipality is only required to satisfy the requirements of I.C. 36–4–3–13(b) *or* I.C. 36–4–3–13(c)[,]" and "the City's purpose in annexing ... territory [pursuant to subsection 36–4–3–13(b) ] is not germane because the requirements of I.C. 36–4–3–13(b) can be met without considering whether the annexing municipality needs and can use the territory to be annexed." *Id.* Appellants invite us to revisit our holding in *Matter of Annexation Ordinance No. X–07–91*, but, finding its analysis persuasive, we decline to do so. Princeton was not required to establish that its annexation of the Parcel was not solely for the purpose of revenue generation.

The trial court's denial of Appellants' motion for summary judgment is affirmed, and the judgment of the trial court in favor of Princeton is affirmed.

FRIEDLANDER, J., and MAY, J., concur.