**Richard THOMAS, Allita Thomas, and Trustcorp Mortgage Company, Appellants/Defendants,**

**and**

**Fannie Mae and EverBank, Appellants/Third–Party Defendants,**

v.

**Benjamin H. THOMAS, Appellee/Plaintiff.**

No. 45A05–0906–CV–357.

Court of Appeals of Indiana.

March 16, 2010.

John H. Halstead, Querrey & Harlow, Merrillville, IN, Attorney for Appellants Trustcorp Mortgage Company, Fannie Mae, and EverBank.

Gerald M. Bishop, Gerald M. Bishop & Associates, Merrillville, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Trustcorp Mortgage Company and Appellants/Third–Party Defendants Fannie Mae and EverBank appeal from the trial court's judgment in favor of Appellee/Plaintiff Benjamin Thomas. Appellants challenge the trial court's conclusion that the mortgage Trustcorp holds on Benjamin's home is invalid. We affirm.

## FACTS AND PROCEDURAL HISTORY

Benjamin purchased his home in Gary in 1965 and has lived there ever since. In July of 1987, as part of his retirement planning, Benjamin conveyed his home to son David Thomas by quit claim deed with the understanding that it remained Benjamin's home and that he could recover title at any time upon request. In October of 1995, David conveyed Benjamin's home by

quit claim deed to another of Benjamin's sons, Richard Thomas. Benjamin and Richard agreed that Richard would return title to the home to Benjamin upon request. At no time did Benjamin relinquish possession of the home.

In June of 2001, following a family dispute, Benjamin requested that Richard convey title of the home back to him, but Richard refused to do so. On August 1, 2001, Benjamin filed a notice of intention to hold a mechanic's lien on the home for $200,000. On September 12, 2001, Benjamin filed a quiet title suit against Richard but did not file a *lis pendens* notice at the time or at any time thereafter. On December 6, 2001, Richard obtained a $118,000 loan from Trustcorp in exchange for a mortgage on the home. Richard was unemployed and living in Georgia at the time and, in connection with the loan application process, submitted a release of mechanic's lien that bore what purported to be Benjamin's signature but was not. Additionally, the release instrument indicates only the presence of Richard as signatory and refers to the lien instrument as bearing the designation "2001 003334" when the actual designation on the notice was "2001 060516." Exs. 3, 4. Trustcorp did not contact Benjamin regarding the purported release, and the loan agreement was completed. As it happened, Richard never made any payments on the mortgage loan. On July 3, 2002, Benjamin filed suit to foreclose his mechanic's lien on the home, a suit that included Trustcorp as a defendant and which was later consolidated with this case.

On December 17, 2003, Richard filed for bankruptcy in the Northern District of Georgia, a case in which Benjamin intervened. On March 1, 2005, as part of a mediated settlement, Richard conveyed the home back to Benjamin by quit claim deed. Although Richard's obligation to Trustcorp was discharged in his bankruptcy action, the validity of Trustcorp's lien on the home was not addressed in that proceeding. On August 10, 2007, the trial court entered partial summary judgment in favor of Trustcorp on the issue of the validity of Benjamin's mechanic's lien. Benjamin subsequently executed and tendered a release of mechanic's lien to Trustcorp. At some point, Trustcorp conveyed the right to collect the mortgage loan to Fannie Mae and the servicing rights to EverBank.

On June 5, 2009, the trial court entered judgment in favor of Benjamin, concluding that Trustcorp's mortgage on the home was invalid. The trial court concluded that Trustcorp's mortgage was a product of a fraud (specifically, the forged mechanic's lien release) and therefore invalid. The trial court also concluded that, despite Benjamin's failure to file a *lis pendens*, Trustcorp had constructive notice of his claims due to Benjamin's pending litigation with Richard and the irregularities in the mechanic's lien release.

## DISCUSSION AND DECISION

### Standard of Review

When, as here, the trial court enters findings of fact and conclusions thereon, we apply the following two-tiered standard of review: we determine whether the evidence supports the findings and the findings support the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind.Ct.App. 2002). The trial court's findings of fact and conclusions thereon will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* at 839–40. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* at 840. This court neither reweighs the evidence nor assesses the credibility of

witnesses, but considers only the evidence most favorable to the judgment. *Id.*

### I. Whether the Trial Court Erred in Concluding that Trustcorp's Mortgage is Invalid on the Basis that Trustcorp was not a Bona Fide Mortgagee

■ In 2001, Indiana's *lis pendens* statutory scheme provided, in part, as follows:

(a) This section applies to a person who commences a suit:

(1) in any court of Indiana or in a district court of the United States sitting in Indiana;

(2) by complaint as plaintiff or by cross-complaint as defendant; and

(3) to enforce any lien upon, right to, or interest in any real estate upon any claim not founded upon:

(A) an instrument executed by the party having the legal title to the real estate, as appears from the proper records of the county, and recorded as required by law; or

(B) a judgment of record in the county in which the real estate is located, against the party having the legal title to the real estate, as appears from the proper records.

(b) The person shall file, with the clerk of the circuit court in each county where the real estate sought to be affected is located, a written notice containing:

(1) the title of the court;

(2) the names of all the parties to the suit;

(3) a description of the real estate to be affected; and

(4) the nature of the lien, right, or interest sought to be enforced against the real estate.

Ind.Code § 34–34–1–3 (2001) (now Ind. Code § 32–30–11–3 (2009)).

Section 9 of the *lis pendens* scheme provided as follows:

(a) This section applies to the following:

(1) Suits described in section 2 or 3 of this chapter.

(2) The seizure of real estate under attachments and the levy of real estate under execution in the cases mentioned in section 5 of this chapter.

(b) Actions referred to in subsection (a) do not:

(1) operate as constructive notice of the pendency of the suit or of the seizure of or levy upon the real estate; or

(2) have any force or effect as against bona fide purchasers or encumbrancers of the real estate;

until the notices required by this section are filed with the proper clerk.

Ind.Code § 34–34–1–9 (2001) (now Ind. Code § 32–30–11–9 (2009)).

■ "[T]o qualify as a bona fide purchaser,[1] one has to purchase in good faith, for a valuable consideration, and without notice of the outstanding rights of others." *Kumar v. Bay Bridge, LLC*, 903 N.E.2d 114, 116 (Ind.Ct.App.2009) (citation omitted). "The theory behind the bona fide purchaser defense is that every reasonable effort should be made to protect a purchaser of legal title for a valuable consideration without notice of a legal defect." *Id.* (citation omitted). There is no dispute that Benjamin failed to file a lis pendens notice when he filed his quiet title action against Richard on September 12, 2001. The trial court, however, concluded that Trustcorp did not qualify as a bona fide mortgagee because it did not act in good faith and had constructive notice of Benja-

---

1. The law regarding bona fide purchasers applies with equal force to mortgagees. *See, e.g., Weathersby v. JPMorgan Chase Bank, N.A.,* 906 N.E.2d 904, 910 (Ind.Ct.App.2009).

min's lawsuit. Trustcorp contends that these conclusions were erroneous.

The record supports conclusions that Trustcorp did not act in good faith and can be imputed with notice of Richard's fraud and Benjamin's lawsuit. The Indiana Supreme Court has squarely held that "one who fails to examine land which he is about to purchase, and to inquire as to the rights of one in possession, is not acting in good faith and will not be treated as a bona fide purchaser." *Mishawaka, St.Joseph Loan & Trust Co. v. Neu,* 209 Ind. 433, 443, 196 N.E. 85, 90 (1935). Regarding notice of competing claims, the Court also held that "means of knowledge, with the duty of using them, are equal to knowledge itself." *Id.* The Indiana Supreme Court has also held that possession of land puts the world on notice that the possessor may have a claim of ownership and right to possession. *See Olds v. Hitzemann,* 220 Ind. 300, 308, 42 N.E.2d 35, 38 (1942) ("[Appellees] were still in possession of their land, and their possession was notice to the world of their claims to ownership and right to possession."). Quite simply, it is undisputed that Benjamin was in possession of the property in question and that Trustcorp nonetheless did nothing to ascertain his rights to it. It is apparent that even a cursory investigation would have quickly uncovered both Richard's fraud and Benjamin's claims on the home. Under the circumstances, Trustcorp cannot have been a bona fide mortgagee, and we therefore affirm the trial court's judgment in this regard.

■ Moreover, even in the absence of a duty to inspect the property, we believe that irregularities on the face of the forged release of mechanic's lien would have put a reasonably prudent person on inquiry notice that something was amiss.

The law recognizes two kinds of notice, constructive and actual. Constructive notice is provided when a deed or mortgage is properly acknowledged and placed on the record as required by statute. However, an otherwise valid instrument which is not entitled to be recorded, improperly recorded, or recorded out of the chain of title does not operate as constructive notice, although binding upon persons having actual notice. Notice is actual when notice has been directly and personally given to the person to be notified. Additionally, actual notice may be implied or inferred from the fact that the person charged had means of obtaining knowledge which he did not use. Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself. Whether knowledge of an adverse interest will be imputed in any given case is a question of fact to be determined objectively from the totality of the circumstances.

*Keybank Nat. Ass'n v. NBD Bank,* 699 N.E.2d 322, 327 (Ind.Ct.App.1998) (citations omitted).

■ As an initial matter, it is clear to us that the trial court, although purporting to find that Trustcorp had *constructive* notice of Richard's fraud and Benjamin's quiet title lawsuit, actually found that it had *inquiry* notice of those things. Trustcorp cannot have had constructive knowledge of the quiet title action because Benjamin never filed his *lis pendens* notice. Nonetheless, we will affirm the trial court's judgment on this point if the record contains sufficient evidence to support a finding of inquiry notice. "The Court of

Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court." *Moore v. State,* 839 N.E.2d 178, 182 (Ind.Ct.App. 2005), *trans. denied.*

As for the purported lien release, first, the instrument was improperly notarized in that it indicates that only Richard was present when it was notarized, even though it was supposedly executed by Benjamin. A notary public is prohibited from acknowledging any instrument unless the person executing it signs it in her presence or affirms to her that the signature on the instrument is the person's own, and there is no indication that either of those things happened in this case. Ind.Code § 33–16–2–2 (2001) (now Ind.Code § 33–42–2–2 (2009)). Indeed, it occurs to us that the whole purpose of a notary public acknowledgment is to prevent just the sort of forgery and fraud that occurred here.

Second, and perhaps even more compelling, was the fact that the lien the instrument was purporting to release was designated "2001 003334" when the actual notice of intention to hold mechanic's lien filed by Benjamin was designated "2001 060516." Plaintiff's Exs. 3, 4. Trustcorp clearly had the means to discover that the lien the forged instrument purported to release did not exist under that designation, and yet did not use those means. In light of the amount of the loan, $118,000, we believe that a reasonably prudent lender would have taken the simple steps necessary to verify that a superior $200,000 mechanic's lien had indeed been released, especially when the release instrument had been improperly notarized.

## II. Whether the Trial Court Erred in Concluding that Trustcorp's Mortgage is Invalid on the Basis that it was the Result of Fraud

■ The trial court specifically found that the mechanic's lien release Richard provided to Trustcorp was forged, a finding that has ample support in the record. Benjamin contended below that Trustcorp's mortgage was rendered invalid by virtue of Richard's fraud, and the trial court agreed. "It is a fundamental principle, worthy of the rank of a maxim, that what fraud creates equity will destroy." [2] *Ralph v. George,* 78 Ind.App. 491, 495, 136 N.E. 44, 45 (1922) (citation omitted). On appeal, Trustcorp counters that Indiana courts have recognized a bona fide purchaser exception to the above rule, and we agree that this is indeed the case. *See, e.g., Scott v. Davis,* 117 Ind. 232, 233, 20 N.E. 139, 139–40 (1889) ("A purchaser who buys land and pays a consideration for it will hold the land against the creditors of the vendor, unless the creditors affirmatively show that the purchaser had notice of the intention of the vendor to defraud his creditors, or that he participated in his grantor's fraud. It is not enough to show fraud on the part of the vendor, where the purchaser is not a mere volunteer, but pays a consideration for the land. To set aside the conveyance as fraudulent, much more must be shown.") (citations omitted). As in the *lis pendens* context, the question here is whether Trustcorp qualifies as a bona fide mortgagee. As we previously decided, however, Trustcorp could not have been a bona fide mortgagee due to its failure to investigate Benjamin's interest in the home. Consequently, we affirm the

---

**2.** The version of this citation found in the www.westlaw.com database places quotation marks around the phrase "what fraud creates equity will destroy." While this error does not seem to alter the meaning of the citation, we will continue to exercise caution in citing to non-official authorities.

trial court's judgment in this respect as well.

We affirm the judgment of the trial court.

NAJAM, J., and FRIEDLANDER, J., concur.