**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 05 2012, 8:33 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT *PRO SE*:

**CHRISTOPHER K. STARKEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**BRIAN M. KUBICKI**
**J. THOMAS VETNE**
**BRIAN R. GATES**
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHRISTOPHER STARKEY, )
)
    Appellant-Respondent, )
)
      vs. ) No. 49A05-1104-DR-194
)
JANET PANOCH, )
)
    Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
The Honorable Jeffrey L. Marchal, Master Commissioner
Cause No. 49D12-0904-DR-17217

**March 5, 2012**

**MEMORANDUM DECISION—NOT FOR PUBLICATION**

**BRADFORD, Judge**.

Appellant/Respondent Christopher Starkey ("Husband") challenges the trial court's judgment in a dissolution action brought by his former spouse, Janet Panoch ("Wife"). Upon appeal, Husband challenges the trial court's judgment by claiming that it (1) improperly valued certain personal property, (2) awarded Wife certain house and utility fees without proper justification, (3) failed to credit him with certain payments, (4) improperly dated the parties' separation, (5) abused its discretion in refusing to require Wife to sign certain tax returns, and (6) erroneously found him in contempt. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married in June of 1995. They had two children, Z.S., born in 1995, and L.S., born in 1998. During their marriage, Husband earned money as a self-employed lawyer, and Wife homeschooled the children. On July 17, 2006, Wife filed her petition for dissolution of marriage in Boone County. Husband and Wife subsequently reconciled, but they did not seek to dismiss Wife's petition.

In 2007, Husband and Wife moved to Marion County and established a marital residence there, where they lived with Z.S. and L.S. in 2007 and 2008. Husband and Wife's marriage deteriorated around the 2008 holiday season. On January 6, 2009, Wife took the children to Florida and did not return until April 23, 2009. At the time, Z.S. was recovering from a recent surgery. On February 7, 2009, Husband wrote Wife in Florida suggesting discussing the prospect of divorce and separation. On March 13, 2009, Wife sent Husband

2

an email acknowledging her agreement to divorce. Wife subsequently moved to change the venue of her dissolution petition from Boone to Marion County, which Boone County granted on March 30, 2009.

Since the parties' separation, Wife, who has a college education, has not found full-time employment. She currently receives $250 per week as a kindergarten teacher.

Prior to the February 4, 2011 dissolution hearing, Husband and Wife reached a settlement agreement regarding child custody and visitation. Following the dissolution hearing, the trial court awarded the parties joint legal custody with Wife having primary physical care, pursuant to their settlement agreement. In addition, the trial court ordered Husband to pay child support and medical insurance, divided the marital estate, declined to require Wife to sign certain tax returns, ordered each party to pay his or her own attorney's fees, and found Husband in contempt for failure to make certain ordered payments. Husband subsequently filed a motion to correct errors, which the trial court denied.

Husband filed his notice of appeal on April 20, 2011. On August 18, 2011, Husband filed a Verified Statement of the Evidence seeking to supplement the record pursuant to Indiana Appellate Rule 31 on the grounds that during certain inaudible portions of the transcript, Wife waived any claim of spousal maintenance. Following Wife's response denying that the record contained such a waiver, the trial court denied Husband's motion. Accompanying this denial was an affidavit by the presiding commissioner averring that he had no recollection whether spousal maintenance was discussed, that the context of the inaudible portions of the transcript suggested the parties were not discussing maintenance,

and that no portion of his decree addressed maintenance. Further facts will be provided as needed.

## DISCUSSION AND DECISION

### I. Standard of Review

When, as here, the trial court enters findings of fact and conclusions thereon, we apply the following two-tiered standard of review: we determine whether the evidence supports the findings and the findings support the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind. Ct. App. 2002). The trial court's findings of fact and conclusions thereon will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* at 839-40. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* at 840. This court neither reweighs the evidence nor assesses the credibility of witnesses, but considers only the evidence most favorable to the judgment. *Id.*

Indiana Code section 31-15-7-5 (2008) provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
(2) The extent to which the property was acquired by each spouse:
(A) before the marriage; or
(B) through inheritance or gift.
(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

4

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
(5) The earnings or earning ability of the parties as related to:
    (A) a final division of property; and
    (B) a final determination of the property rights of the parties.

"Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court." *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

> An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.

*Id*. (citations, quotation marks, and brackets omitted).

## II. Analysis

### A. Personal Property

In its order, the trial court determined that the value of the parties' respective personal property, included household goods and furnishings, was unknown, and it awarded each party the property currently in his or her possession. According to Husband, the value of the property and goods in the house, which were in Wife's possession, was between $3000 and $15,000.

Husband first claims that the trial court abused its discretion by failing to value Wife's

5

personal property at $3000. According to Husband, the record demonstrates that the property was worth at least this much. Contrary to Husband's claim, the record demonstrates that the property was, according to Wife, "nothing of value," and she could not imagine receiving $3000 for it. Tr. p. 46.

We must conclude that the trial court's order is supported by the evidence. Husband's claim that Wife agreed that her personal property had a $3000 value is contradicted by her testimony, which the trial court was within its discretion to credit. We find no abuse of discretion.

### B. Maintenance

*House payments.* The trial court ordered that the parties' marital residence be sold, but that Wife and children were to remain in the house until June 30, 2011. The court further ordered Husband to make all monthly mortgage, tax, and insurance payments on the property and that house proceeds must be used to reimburse Husband for payments made during the period of July 1, 2011 to December 31, 2011. Husband claims that his house payments occurring after the February 11, 2011 decree, but before June 30, 2011, when Wife vacates the residence, constitute maintenance. According to Husband, Wife waived any claim to maintenance.

*Utilities.* The trial court ordered that Husband and Wife share the cost of utilities for the marital residence in equal parts. Husband claims that requiring him to pay for any of Wife's utilities during the time period following the dissolution decree but before Wife vacates the residence further constitutes impermissible maintenance.

6

Wife does not dispute that these payments may constitute maintenance. Wife claims, however, that she requested maintenance and that her years of homemaking and lack of career path justify an award of maintenance. Given the trial court's refusal to supplement the record as requested by Husband, and the commissioner's affidavit in support of such refusal, we cannot accept Husband's argument that Wife waived any request for maintenance.

But we are not convinced that these payments constitute maintenance. The commissioner who conducted the dissolution hearing specifically averred that he did not provide for spousal maintenance, and the purely equal distribution of property and lack of findings in support of a maintenance award bear this out. Instead, the payments appear to reflect a division of the parties' debt. Because the trial court awarded an equal distribution of property, Husband is entitled to full reimbursement for his house and utility payments, regardless of whether they occurred before Wife moved out of their home. *See Grimes v. Grimes*, 722 N.E.2d 374, 380-81 (Ind. Ct. App. 2000) (finding that partial—rather than full—reimbursement to Husband of post-dissolution mortgage payments, when property is to be sold and the proceeds distributed equally, results in unequal property distribution), *trans. denied*. Accordingly, we remand with instructions that Husband still make the required house and utility payments but that he be reimbursed from house proceeds for these amounts.

## C.    Credit for Temporary Maintenance/Child Support

Husband claims that the trial court abused its discretion by failing to credit him for certain support and maintenance payments he made pursuant to a temporary order[1] which exceeded fifty percent of his claimed $1109.25 per-week income. According to Husband, his contributions of $72,693.43, which he made since May 18, 2009, constituted seventy-three percent of this weekly income. Husband seeks a credit in the amount of $23,109.97, which is the difference between his actual contributions and the maximum required contributions given his claimed income.

Husband sought this credit at the dissolution hearing by introducing Respondent's Exhibit F, which reflected his above accounting of income and contributions. While Exhibit F was admitted into evidence, subsequent comments by the trial court indicate that it would not be considered absent further agreement or reference by the parties, which did not occur.

Indiana Child Support Guideline 2 states as follows with respect to maximum awards of temporary maintenance and child support:

> Temporary maintenance may be awarded by the court not to exceed thirty-five percent (35%) of the obligor's weekly adjusted income. In no case shall child support and temporary maintenance exceed fifty percent (50%) of the obligor's weekly adjusted income. Temporary maintenance and/or child support may be ordered by the court either in dollar payments or "in-kind" payments of obligations.

Notably, Husband's calculations are based upon an incomplete assessment of his income. In its findings, the trial court found that there was a conflict in the evidence

---

[1] This order is not in the record, nor are multiple other relevant filings. This significantly impedes our review.

8

regarding the income he received from his law practice, and that his earnings varied each year. Based upon several representations of earnings, including Husband's 2009 tax return,[2] the court averaged Husband's law practice income to be $1128 per week. In addition, Husband receives income of $452 per week from two family trusts which he did not include in his calculations. The trial court concluded that Husband's income totaled $1580 per week.

Assuming Husband's income to be $1580 per week, his temporary contributions still constitute approximately 51.5 percent of his income, which exceeds the fifty percent ceiling provided in the Guidelines. Wife does not dispute this but claims that such a small deviation from the Guidelines is warranted given Husband's position as breadwinner for the family. While deviation from the Guidelines is certainly permissible, the trial court must provide findings articulating its reasons for doing so. *See* Ind. Child Support Rule 3. Here, the trial court did not justify its decision in refusing to award Husband a credit for his overpayment of temporary support and maintenance. It appears from the record that the trial court may not have considered Exhibit F at all. While it may have been the parties' burden to remind the trial court about its questioned admissibility, the exhibit was admitted into the record. We are therefore unable to say that the trial court's denial of a credit to Husband for payments he made in excess of the Guidelines was demonstrably justifiable. Accordingly, we remand to the trial court for further consideration and findings as to whether Husband is entitled to a credit for his overpayment of temporary maintenance and support.

---

[2] Husband's adjusted business income is stated as $58,662 on Schedule C of Husband's 2009 1040. This amount equals approximately $1128 per week.

## D. Date of Separation

Husband challenges the trial court's apparently inadvertent use of two separate dates for the date of his and Wife's separation. The court initially found the date of separation to be March 31, 2009, but later, in its distribution of uninsured medical expenses, used March 13, 2009 as the date of separation. Approximately $400 in medical expenses were incurred between March 13 and 31, 2009. Husband claims these expenses qualify as a debt of the marriage, which the trial court erroneously categorized in Paragraphs 114 and 117 of its order as expenses incurred outside of the marriage.

The record supports the use of either date. On February 7, 2009, Husband mailed Wife a letter claiming that Wife had requested a separation and treating separation and divorce as a likely result. On March 13, 2009, Wife sent Husband an email agreeing to proceed with a divorce and indicating that she would transfer her 2006 divorce petition to Marion County, which the trial court found she did that day. Per Wife's request, the Boone Superior Court granted Wife's motion for change of venue to Marion County on March 30, 2009. In establishing a date of separation, the trial court stated that the motion for change of venue and the email communication from Wife to Husband were the best evidence of the parties' mutual intent to dissolve the marriage. While the motion for change of venue was granted on March 30 rather than March 31, it would not have been unreasonable for the trial court to date the separation as the day following the date on which the venue change occurred. Because each date is supported by the record, we are unable to pinpoint whether March 13 or March 31 is the typographical error. Accordingly, we remand to the trial court

to clarify the parties' date of separation and to make any necessary corrections to medical expense calculations based upon the wrong date.

### E.     Tax Returns

During the dissolution proceedings, Husband filed a motion to have Wife sign joint tax returns he prepared for 2008 and 2009.[3]  As part of its decree, the trial court denied Husband's motion, citing evidence in the record that Wife had been advised not to sign the returns given Wife's suspicions of fraud.  Husband claims that this was error on the grounds that Wife does not pinpoint for him the fraudulent items on the returns.

At the dissolution hearing, Wife testified that she believed Husband's taxes to be fraudulent and incorrect.  Wife based her beliefs upon the fact that her bank account had been levied in the past for their unpaid income taxes and because her accountant had advised her that certain social security payments had been improperly calculated.  Wife sought  advice from the Internal Revenue Service, the Indiana Department of Revenue, and a CPA, all of whom advised her not to sign the returns.  The trial court credited Wife's testimony on these matters.  We decline Husband's invitation to reweigh this evidence.  We find no clear error.

### F.     Contempt

### 1.     Procedure

In its dissolution decree, the trial court granted Wife's petition to find Husband in contempt of its May 18, 2009 order to make minimum monthly payments on her Discover

---

[3] This motion is not in the record.

11

card.[4]   Husband challenges the court's contempt finding on the basis that the contempt petition was procedurally defective for its lack of verification and failure to request that he be served with a rule to show cause.

Indiana Code section 34-47-3-1 (2011) provides that a person who willfully disobeys any lawful court order after the order has been served upon him is guilty of indirect contempt.  Indiana Code section 34-47-3-1 (2011) further provides that a person charged with indirect contempt is entitled to be served with a verified rule to show cause setting forth the facts alleging the contempt.  Whether a person is in contempt of a court order is a matter left to the trial court's discretion, and we will reverse a trial court's determination only where an abuse of discretion has been shown.  *Richardson v. Hansrote*, 883 N.E.2d 1165, 1171 (Ind. Ct. App. 2008).

Husband fails to point to any part of the record where he raised these procedural objections before the trial court.  Accordingly, his challenges on these points are waived.  *See Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000) ("A party may not raise an issue for the first time . . . on appeal.").

## 2. Merits

Husband further argues that the trial court cannot hold him in contempt for failure to make Discover Card payments when certain other payments he did make exceeded the maximum allowable under the Guidelines.  Husband claims this constitutes an adequate legal excuse for nonpayment.  Husband points to no place in the record where he made this

---

[4] The May 18, 2009 order is not in the record.

12

argument before the trial court. In any event, the trial court was entitled to reject it, given that nonpayment of the Discover card resulted in a lawsuit against Wife. Of course, Husband's goodwill and cooperation in other matters does not change his noncooperation in making the ordered Discover card payments, and the trial court was within its discretion to reject any effort by Husband at self-help. We find no abuse of discretion.

### G. Discover Card Debt

Husband finally requests this court to reduce the Discover Card balance to $13,868, which is apparently the amount negotiated by Wife after the divorce decree. Husband provides no record evidence in support of his request, nor did he make this request before the trial court. We decline his invitation.

### III. Conclusion

We reverse and/or remand to the trial court with respect to Subsections II.B., C., and D., above. In all other respects, we affirm.

KIRSCH, J., and BARNES, J., concur.