**CRICKET RIDGE, LLC, Appellant–Defendant,**

v.

**Joseph Richard WRIGHT, Appellee–Plaintiff.**

No. 41A01–0705–CV–237.

Court of Appeals of Indiana.

Feb. 26, 2008.

Stephen L. Huddleston, Huddleston & Huddleston, Franklin, IN, Attorney for Appellant.

Martin N. Howe, Indianapolis, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Cricket Ridge, LLC, appeals from the trial court's judgment in favor of Appellee–Plaintiff Joseph Richard Wright. Cricket Ridge raises eight issues, which we consolidate and restate as follows:

I. Whether a comprehensive settlement between Wright and Cricket Ridge constituted a single contract or several;

II. Whether Cricket Ridge is entitled to judgment and attorney's fees on its counterclaim;

III. Whether the accumulation of interest should have terminated on certain money Cricket Ridge deposited with the trial court clerk; and

IV. Whether the trial court miscalculated damages.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

In 1996, Wright decided to sell his 230–acre Johnson County farm. To that end, Wright contacted Fred Johnson, a real estate developer who had been referred to Wright. After negotiations, the farm was divided into six parcels of varying size which were to be sold to Hitrin Development, LLC (in which Johnson had an interest), through real estate contracts or the exercise of options to purchase. Parcels A (9.406 acres), D (8.123 acres), F (57.284 acres), and G (40.487 acres) were to be residential, parcel B (10.952 acres) commercial, and parcel C (110.046 acres) a golf course.

Hitrin agreed to purchase parcel A in December of 1996 for $128,000, of which Wright received $68,000 at closing. In August of 1998, Hitrin agreed to purchase parcel D pursuant to a real estate contract. In 2000, Wright sued Hitrin, Johnson, and Michael Ennis (who also had an interest in Hitrin), alleging nonpayment according to the purchase agreements for parcels A and D.[1]

Johnson formed Cricket Ridge in January of 2002 for the sole purpose of receiving his interest in Hitrin, which apparently had been dissolved following a dispute between Johnson and Ennis. After discussion, Johnson and Wright agreed to settle the 2000 lawsuits, and multiple settlement agreements were produced and signed by the parties on February 21, 2002. The agreement for parcel A provided that Cricket Ridge would pay an additional $56,000 for the land; $28,000 would be paid on February 21, 2002, and the balance by December 31, 2002. The agreement for parcel D provided that Cricket Ridge would pay Wright $2902 for each lot that was platted as a residential subdivision, estimated to be between twenty-seven and thirty-one lots altogether. The agreement, however, also provided that, no later than January 1, 2003, Cricket Ridge was to make a monthly payment of $2902 to Wright "continuing on or before the first day in each calendar month thereafter through March, 2005," or twenty-seven payments. Ex. 3 tab 7 p. 2. The provision for monthly payments made no reference to a plat. As of trial, parcel D had never been platted or otherwise developed.

The agreements also included an option granted to Cricket Ridge to purchase parcel F that had to be exercised by October 15, 2005. Cricket Ridge had the option to purchase all or part of parcel F for either $10,000 per acre plus $1250 per subdivided lot or $12,000 per acre. Finally, the agreements included an option for Cricket Ridge to purchase parcel G. The agreements were presented to Wright's attorney as a package with a cover sheet, entitled "Fred C. Johnson, Joseph Richard Wright, Et Al–Closing Respecting Restructure of Real Estate Purchase and Options" with each separate agreement separated by tabs. Plaintiff's Ex. 23 tab B p. 2.

As it happened, Cricket Ridge did not pay Wright the $28,000 balance due for parcel A by December 31, 2002. Additionally, Cricket Ridge made no payments to Wright related to parcel D. On October 30, 2003, Wright filed a breach-of-contract suit against Cricket Ridge, Hitrin, and Johnson ("Defendants") and amended the complaint on January 6, 2004. In paragraph twelve of the amended complaint, Wright averred that "[a] comprehensive settlement [of the 2000 lawsuits] was reached and includes multiple subparts, all negotiated contemporaneously and in consideration of the other[,]" and paragraph thirteen claimed that

---

1. Parcels B and C were sold to Hitrin, assigned to Ennis Co. (which we assume is controlled by Michael Ennis), and are not part of this litigation. (Tr. 749).

the comprehensive settlement was signed on February 21, 2002. Appellant's App. p. 84.

On April 14, 2004, Defendants requested and received permission to deposit $51,527.15 with the Johnson County Clerk and directed that the amount be applied to the principals owed on parcels A and D as well as to interest and various other fees. Although notice of Defendants' request was served on Wright's attorney, the amount was never offered to Wright as a tender of Cricket Ridge's obligation to him.

On April 13, 2005, Johnson's attorney informed Wright's attorney that Johnson intended to exercise his option to purchase parcel F and wished to close on the property by May 15, 2005. On April 19, 2005, Wright's attorney replied that Wright would not consider a closing on parcel F until the principal and interest due on parcels A and D, along with attorney's fees, title work, and filing fees, was paid, an amount purported to be $146,283.07.

The Defendants' answer to Wright's amended complaint, filed May 9, 2006, read, in part, "The Defendants admit the material allegations contained in rhetorical paragraphs 3–10, 12, 16, and 29 of Count I of the Plaintiff's Amended Complaint." Appellant's App. 99. Cricket Ridge also filed a counterclaim against Wright, alleging that Wright had breached the terms of the comprehensive settlement by refusing to allow it to exercise its option to purchase parcel F and praying for specific performance.

After a bench trial, the trial court entered judgment in favor of Wright against Cricket Ridge in the sum of $20,213.68, ordered that Wright's mortgage on parcel D was foreclosed as a $20,000 lien and that it would be sold in a Sheriff's sale, entered judgment in favor of Hitrin and Johnson in his individual capacity, ordered that Crick-et Ridge take nothing by way of its counterclaim, ordered that Wright was relieved of any obligation to sell parcels F and G to Cricket Ridge, and ordered that sums deposited with the Johnson County Clerk be paid to Wright and "certify the amount so paid to the Court with such amount in excess of [$55,957.80] being applied upon the Judgment hereinabove set forth." Appellant's App. pp. 80–81. The trial court based the damages related to parcel D on a price of $89,962, as though it had platted for thirty-one lots.

## DISCUSSION AND DECISION

### Standard of Review

When, as here, the trial court enters findings of fact and conclusions thereon, we apply the following two-tiered standard of review: we determine whether the evidence supports the findings and the findings support the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind.Ct.App. 2002). The trial court's findings of fact and conclusions thereon will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* at 839–40. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* at 840. This court neither reweighs the evidence nor assesses the credibility of witnesses, but considers only the evidence most favorable to the judgment. *Id.*

### I. Whether Cricket Ridge and Wright's Comprehensive Settlement is One Contract

■ The main issue in this case is whether the February 21, 2002, comprehensive settlement between Cricket Ridge and Wright was a single contract such that Cricket Ridge's breach of some subparts relieved Wright of his duty to perform any other subpart. In other words, the ques-

tion is whether Wright was still obligated to allow Cricket Ridge to exercise its option on parcel F when it failed to perform its contractual duties as to parcels A and D.[2]

Most of the Indiana cases that have examined this issue have turned on the question of whether the various agreements were supported by separate consideration; if so, separate contracts exist, if not, one contract does. We do not, however, believe that such a narrow approach is appropriate in this case. While Indiana courts have recognized that the commonality (or divisibility) of consideration is usually dispositive, this case, in our view, should stand as an exception to that general rule. *See, e.g., Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 891 (Ind.Ct.App.2002) ("The usual test of the severability of a contract is the entirety or divisibility of the consideration[.]"), *trans. dismissed* (2003).

Keeping in mind that "[w]hen interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties[,]" we believe that an approach that takes all circumstances into account is best. *First Nat. Bank & Trust v. Indpls. Pub. Hous. Agency*, 864 N.E.2d 340, 350 (Ind.Ct.App.2007). Because Indiana courts have not spoken on this precise question, we look to foreign jurisprudence, summarized below, for guidance:

> The essential test of whether a transaction involving a number of promises constitutes one contract or more than one contract is whether the parties assented to all the promises as a single whole so that there would be no bargain whatever if any promise or set of promises were to be stricken out. In such a case, the essential question is whether the parties

gave a single assent to the whole transaction or assented separately to several things, and this is a question of fact. If there is a single assent to a whole transaction involving several things or acts, there is only one contract; if there are separate assents to several things, there is more than one contract.

> In making the determination whether a particular transaction results in one entire contract or in several separate contracts, the intention of the parties is to be ascertained from the whole instrument viewed in connection with the conditions when the contract was made.

17A Am.Jur. 2D *Contracts* § 381 (2007) (footnotes containing collected cases omitted).

The Delaware Supreme Court succinctly summarized the point when it wrote that "[t]he entirety of the contract depends upon the intention of the parties, and not upon the divisibility of the subject-matter. The severable nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract when that is shown." *Orenstein v. Kahn*, 13 Del.Ch. 376, 119 A. 444, 446 (1922) (citation omitted). While the divisibility of consideration will often be dispositive or very helpful, this will not be true in all cases, so today we adopt the view that "the essential question is whether the parties gave a single assent to the whole transaction or assented separately to several things, and this is a question of fact." 17A Am.Jur. 2D *Contracts* § 381 (2007).

When we examine the instruments comprising the comprehensive settlement and the conditions under which it was signed, we are led to the conclusion that the par-

---

**2.** Cricket Ridge does not maintain on appeal, as it did at trial, that, even if the comprehensive settlement was one contract, Wright breached it first or that its breach was not material.

ties gave a single assent to the whole transaction. The comprehensive settlement therefore represents one contract between Wright and Cricket Ridge, despite its several subparts and divisible consideration. First, the various subparts were signed the same day and were under a common cover separated by tabs. Plaintiff's Ex. 23 tab B. Second, casual inspection of the subparts reveals that all of the transactions were being closed the same day and involved the same parties and parcels of real estate situated very closely to one another. In other words, we believe that a reasonable person would assume that the various agreements, presented as they were together and dealing with the same subject matter and parties, were parts of a single comprehensive settlement.

 The surrounding conditions under which the comprehensive settlement was signed are even more compelling. First, in its answer to Wright's amended complaint, Cricket Ridge agreed that "[a] comprehensive settlement [of the 2000 lawsuits] was reached and includes multiple subparts, all negotiated contemporaneously and in consideration of the other[.]" [3] Appellant's App. p. 84. In particular, Cricket Ridge's use of the term "subparts" indicates that it intended that each individual agreement was a part of the whole. Second, Wright testified concerning the comprehensive settlement that "[t]his was

all ... this was all one unit ... one thing." Tr. p. 454. Finally, and perhaps most compelling, Johnson told Wright during negotiations that "[i]f they didn't get the options [for parcels F and G] *there would be no contract.*" Tr. p. 578–79 (emphasis added). Although Johnson testified that he intended the subparts to be separate transactions, the trial court was free to disregard this testimony and did. The comprehensive settlement and the conditions surrounding its signing lead us to conclude that it represents a single contract between Wright and Cricket Ridge. Therefore, a breach by either party of any subpart would relieve the other party of any obligation to perform any other subparts.

## II. Whether Cricket Ridge is Entitled to Judgment on its Counterclaim

Cricket Ridge filed a counterclaim against Wright for his alleged failure to perform in refusing to allow him to exercise his option to purchase parcel F. This argument, however, is premised on the comprehensive settlement being made up of separate agreements and is therefore fatally undercut by our conclusion that it is not. Cricket Ridge breached the comprehensive settlement and so relieved Wright of any further performance under it. *See Licocci v. Cardinal Assocs., Inc.,* 492 N.E.2d 48, 52 (Ind.Ct.App.1986) ("A party first guilty of a material breach of contract

---

**3.** Wright argues that this judicial admission is binding and equivalent to admitting the existence of only one contract and therefore dispositive. While we are not inclined to agree that it is dispositive, particularly because the Defendants' entire case at trial was based on a contrary position, this is not to say that the admission is without effect.

A judicial admission, that is, an admission in a current pleading or made during the course of trial, is conclusive upon the party making it, and relieves the opposing party of the duty to present evidence on

that issue. Admissions are to be considered and weighed precisely as other evidence in the case by the trier of fact. An admission's weight depends upon its character, the circumstances under which it was made, and the effect of such circumstances is to be determined by the trier of fact.

*Waugh v. Kelley,* 555 N.E.2d 857, 859 (Ind.Ct. App.1990) (citations omitted). At the very least, the trial court could have, and did, consider Cricket Ridge's judicial admission as it would any other evidence.

may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract."), *trans. denied.* Cricket Ridge is entitled to no relief on its counterclaim or request for attorney's fees.

### III. Whether Interest Should have Continued to Accrue on Money Cricket Ridge Deposited with the Trial Court Clerk

Cricket Ridge contends that the money it deposited with the Johnson County Clerk constituted a proper tender of its obligation to Wright and therefore stopped the accrual of prejudgment interest on the amount in question. "The award of prejudgment interest is based on the rationale that there has been a deprivation of the plaintiff's use of money or its equivalent and that unless interest is added, the plaintiff cannot be fully compensated." *4–D Bldgs., Inc. v. Palmore,* 688 N.E.2d 918, 920 (Ind.Ct.App.1997). However, "[i]t is well-settled that a proper tender will serve to discharge the obligation to pay additional interest." *Id.* "A proper tender generally requires full payment of a debt due, and if refused, the tender must be kept open by paying the full amount into court." *Id.* Here, although Wright's attorney was given notice of the payment to the clerk, there is no indication that Wright was ever offered the alleged tender before it was deposited with the clerk or that the amount in question was a full payment of the debt. As such, there was no good tender, and the trial court properly awarded prejudgment interest on the amount deposited with the clerk.

### IV. Whether the Trial Court Miscalculated Damages for Parcel D

The trial court calculated damages related to parcel D as though it had been platted for thirty-one lots, which is the greatest number of lots contemplated by the comprehensive settlement. As such, the trial court calculated the sale price for parcel D to be $89,962.00. As Cricket Ridge points out, however, parcel D has never been platted, and Cricket Ridge contends that there is no evidence to justify damages based on a thirty-one-lot plat. We agree with Cricket Ridge on this point but are still left with the question of how damages are to be correctly calculated. To answer it, we look to the provisions of the comprehensive settlement dealing with parcel D.

As an initial matter, we note that the terms of the comprehensive settlement regarding the sale price of parcel D are somewhat conflicting and ambiguous. Specifically, Agreement 1 of the parcel D subpart provides that "[t]he remainder of the purchase price to be paid to Wright for the Lots shall be equal to the product obtained by multiplying Two Thousand Nine Hundred Two Dollars ($2,902.00) by the final number (as determined by the Plat) of Lots[.]" Ex. 3 tab 7 p. 2. On the other hand, Agreement 2 provides, without reference to a plat or number of lots, that Cricket Ridge shall make twenty-seven monthly payments of $2902 starting on January 1, 2003. So, although Agreement 1 implies that Cricket Ridge will owe Wright no more money if parcel D is not platted, Agreement 2 provides that Cricket Ridge is obligated to pay Wright at least $78,354 in any event. As a result of this seeming conflict, we must interpret the contract.

"[W]hen there is an ambiguity [in a contract], 'the paramount rule for interpretation is to give effect to the actual intent of the parties ... as collected from the whole instrument....'" *Johnson v. Dawson,* 856 N.E.2d 769, 773 (Ind.Ct.App.2006) (citation

omitted). "[S]pecific words and phrases cannot be read exclusive of other contractual provisions; rather, the parties' intentions must be determined by reading the contract in its entirety and attempting to construe contractual provisions so as to harmonize the agreement." *Id.*

 When we consider Agreements 1 and 2 together, the most reasonable interpretation is that Wright and Cricket Ridge intended that the remaining amount due on parcel D would be at least $78,354, but that, if the parcel were platted and subdivided into more than twenty-seven lots, the price would rise accordingly.[4] Essentially, our construction of the provisions relating to the sale price of parcel D is that the platting of the parcel was a condition precedent that, had it ever occurred, could have obligated Cricket Ridge to pay more than $78,354 for parcel D. "Under contract law, a condition precedent is a condition that must be performed before the agreement of the parties becomes a binding contract or that must be fulfilled before the duty to perform a specific obligation arises." *AquaSource, Inc. v. Wind Dance Farm, Inc.*, 833 N.E.2d 535, 539 (Ind.Ct.App.2005). Since the platting of parcel D never occurred, Cricket Ridge's duty to pay more than $78,354 never arose. The trial court therefore erred in calculating damages based on a sale price for parcel D of $89,962.

## Conclusion

We conclude that the comprehensive settlement between Cricket Ridge and Wright constituted a single contract, such that Cricket Ridge's breach of one subpart relieved Wright of his duty to perform the others. It follows, then, that Cricket Ridge's counterclaim that Wright is re-

quired to allow it to exercise an option on parcel F must fail. Moreover, we conclude that the trial court properly assessed interest on money Cricket Ridge deposited with the Johnson County Clerk, as it did not represent a proper tender to Wright. Finally, we conclude that the trial court erred in calculating damages based on a sale price of $89,962 for parcel D. We remand with instructions to recalculate Wright's damages based on a sale price of $78,354 for parcel D. In all other respects, the judgment of the trial court is affirmed.

BAKER, C.J., and DARDEN, J., concur.

---

4. The contrary interpretation leads to the unconscionable result that Cricket Ridge would not have to pay *any* additional money for parcel D if it were not platted. Needless to say, we do not believe this could have been the parties' intention.