The TOWN OF PLAINFIELD,
Indiana, Appellant,

v.

PADEN ENGINEERING CO., INC.,
Merchants Bonding Company (Mutual), and Everest Reinsurance Company, Appellees.

No. 32A04–1005–PL–280.

Court of Appeals of Indiana.

Feb. 25, 2011.

Melvin R. Daniel, William L. O'Connor, James B. Chapman II, Benesch, Friedlander, Coplan & Aronoff, LLP, Indianapolis, IN, Attorneys for Appellant.

1. We held oral argument in this matter on February 4, 2011. We thank counsel for the parties for their able advocacy.

2. At oral argument, Plainfield conceded one previously-articulated issue, wherein Plainfield contended that the construction contract at issue violated Indiana statutory authority governing the time for release of performance bonds.

3. The contract documents include a Standard Form Agreement, General Conditions of the

David J. Theising, Harrison & Moberly, LLP, Indianapolis, IN, James L. Lowry, Kendall Wood Lowry & Kessinger, Danville, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

The Town of Plainfield ("Plainfield") appeals two orders of the Hendricks Superior Court, one granting partial summary judgment to Paden Engineering Co., Inc. ("Paden"), and one granting partial summary judgment to Merchants Bonding Company and Everest Reinsurance Company (collectively, "the Sureties"), upon Plainfield's claims for damages for breach of contract and for payment upon a performance bond, respectively.[1] We affirm.

### Issues

Plainfield presents for review the following consolidated and restated issues:[2]

I. Whether the trial court erroneously granted partial summary judgment to Paden; and

II. Whether the trial court erroneously granted partial summary judgment to the Sureties.

### Facts and Procedural History

On July 19, 2002, Plainfield and Paden entered into a Standard Form of Agreement between Owner [Plainfield] and Contractor [Paden] ("the Contract")[3] whereby Paden would provide a "steel package"[4]

Contract for Construction, Document A201 of the American Institute of Architects (AIA Document A201), Supplementary General Conditions, and Special Conditions.

4. Pursuant to Bid Package No. 1/Bid Item # 1B, this was to include structural steel and associated fabrications.

for the Plainfield Recreation/Aquatic Center ("the Project"), in exchange for payment of $939,000.00. Paden delivered to Plainfield an AIA Document A312 Performance Bond dated July 22, 2002 issued by Paden as Contractor and Merchants and Everest as Sureties, in the amount of $ 1,173,750.00. The Performance Bond expressly incorporates by reference the terms of the Contract.

Article 8 of the Contract provides that "[t]he Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions." (App.106.) As amended by Supplementary Conditions, Article 14.2.1 of the General Conditions, titled "Termination by Owner for Cause," provides:

> The Owner may terminate the Contract if the Contractor: (1) persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials; (2) fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors; (3) persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or (4) otherwise is guilty of breach of a provision of the Contract Documents.

(App.155–56.) Article 14.2.2 of the General Conditions provides that the Owner is obligated to consult with the Construction Manager and obtain certification by the Architect that sufficient cause exists to justify termination.

Section 3 of the Performance Bond provides that, where there is no Owner default, the Sureties' obligations arise after notice that declaration of contractor default was under consideration, a conference request, a lapse of twenty days, a declaration of default and formal termination, and the Owner's agreement to pay the Contract balance to the Sureties or a selected contractor. Also, the Performance Bond having incorporated the Contract terms, seven days written notice to the Sureties was required. Upon the Owner's exercise of termination procedures, the Sureties were to be afforded options: finance the principal (with Owner consent), takeover completion of the construction contract, tender damages payment to Owner, agree to completion by Owner, or deny liability.

Plainfield also contracted with Sebree & Associates, Inc. to act as Architect on the Project.[5] Among other duties, the Architect was to issue a Certificate for Payment or Project Certificate for Payment (indicating that the work had progressed to the point indicated and was of adequate quality) before any installment payment could be made to the contractor.

The working relationship between Plainfield and Paden was contentious, with each contending that the other caused delays. On October 9, 2003, Plainfield issued a Notice of Termination to Paden, stating that the letter constituted Paden's seven-day written notice of termination of the Contract. Written notice was not contemporaneously provided to the Sureties. However, on October 24, 2003, Plainfield issued a letter to the Sureties stating in relevant part:

> The Town of Plainfield has been forced to take action to terminate the contract of Paden Engineering Company in re-

---

5. The designated materials do not include a written contract between Plainfield and the Architect. However, the parties agree that Sebree & Associates, Inc. was the architect for the Project. Also, the designated materials include a "Project Manual for Plainfield Recreation/Aquatic Center" prepared by Sebree & Associate, Inc., Architects, of Avon, Indiana. (App.158.)

gards to the above referenced bonded project. You can expect further information and requests in regards to the above referenced bonds.

(App.247) On October 12, 2004, subcontractor Hoosier Steel, Inc. filed a complaint against Paden and the Sureties.[6] Paden filed a third-party complaint against Plainfield. In turn, Plainfield filed a counterclaim against Paden and a third-party complaint against the Sureties. On June 16, 2008, the trial court dismissed Hoosier Steel's complaint.

On November 25, 2008, the Sureties filed a motion for partial summary judgment in their favor. On the same day, Paden and the Sureties jointly filed a separate motion for partial summary judgment. Plainfield filed a cross-motion for summary judgment as to all its claims. The trial court conducted a hearing at which argument of counsel was heard on all pending summary judgment motions.

On March 10, 2010, the trial court entered three orders on the summary judgment motions. The trial court granted the Sureties' motion for partial summary judgment, concluding that they had no obligation under the Performance Bond due to failure of conditions precedent, more specifically, notice and opportunity to mitigate damages. The trial court also granted Paden's motion for partial summary judgment, concluding that Plainfield had not complied with a condition precedent, specifically, obtaining an architect's certification of good cause for termination. Finally, the trial court denied Plainfield's motion for summary judgment. As to each of the partial summary judgment orders, the trial court directed the entry of a final judgment upon an express determination of no just reason for delay, pursuant to Indiana Trial Rule 54(B).

On April 9, 2010, Plainfield filed a motion to correct error. The motion was summarily denied. Plainfield appealed. On motion by Paden and the Sureties, this Court dismissed the portion of the appeal challenging the denial of Plainfield's motion for summary judgment because there was no entry of final judgment. The appeal of the partial summary judgment orders proceeded.

## Discussion and Decision

### Standard of Review

Plainfield is appealing the denial of a motion to correct error, which alleged that the trial court erred in granting Paden and the Sureties' motions for partial summary judgment. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Newland Resources, LLC v. Branham Corp.*, 918 N.E.2d 763, 772 (Ind. Ct.App.2009).

Summary judgment is appropriate only if the pleadings and designated materials considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Yates v. Johnson County Bd. of Comm'rs*, 888 N.E.2d 842, 846 (Ind.Ct.App.2008). We must construe all evidence in favor of the party opposing summary judgment, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* at 847. We carefully review a grant of summary judgment in order to ensure that a party was not improperly denied his or her day in court. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003). The fact that the parties made cross motions for summary judgment does not alter this standard of review. *Decker v. Zengler*, 883 N.E.2d 839, 842 (Ind.Ct.App. 2008), *trans. denied.*

---

**6.** Following mediation, the Hoosier Steel complaint has now been dismissed.

Finally, we do not owe deference to the findings and conclusions entered by the trial court in a summary judgment order. *Myers v. Yoder*, 921 N.E.2d 880, 885 (Ind. Ct.App.2010). Although such findings and conclusions may assist our review, we will affirm if the trial court's grant of summary judgment can be sustained on any theory or basis in the record. *Id.* Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract presents a question of law. *Von Hor v. Doe*, 867 N.E.2d 276, 278 (Ind.Ct.App.2007), *trans. denied.*

### Contract Interpretation Generally

■ Our Indiana Supreme Court has expressed its commitment to advancing the public policy in favor of enforcing contracts. *See Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind.1995). It is in the best interest of the public not to unnecessarily restrict persons' freedom to contract. *Id.* Accordingly, as a general rule, the law will allow persons of full age and competent understanding the utmost liberty in contracts. *Barrington Mgm't Co. v. Paul E. Draper Family Ltd. Partnership*, 695 N.E.2d 135, 140 (Ind.Ct.App.1998). Contracts entered into freely and voluntarily will be enforced by the courts. *Id.*

Our standard of review is *de novo.* *Id.* If a contract is ambiguous or uncertain and its meaning must be determined by extrinsic evidence, its construction is a matter for the fact finder. *Id.* On the other hand, if an ambiguity arises because of the language used in the contract rather than extrinsic facts, its construction is purely a question of law. *Id.* Reading the contract as a whole, we attempt to determine the intent of the parties at the time the contract was made. *Id.* We construe the language so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* Finally, we accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *Id.*

### I. Partial Summary Judgment–Paden

■ Plainfield argues that it was entitled to proceed with a breach of contract action against Paden, while Paden contends that it established that Plainfield failed to satisfy at least one condition precedent. A condition precedent is a condition that must be performed before the agreement of the parties becomes binding, or a condition that must be fulfilled before the duty to perform a specific obligation arises. *Cricket Ridge, LLC v. Wright*, 880 N.E.2d 1271, 1278 (Ind.Ct.App.2008), *trans. denied.* Where the condition precedent never occurred, a party cannot enforce a conditional contract obligation. *See id.*

The arguments of the parties implicate Article 14.2.2 of the General Conditions of the Contract, which provides:

> When any of the above reasons exist, the Owner, after consultation with the Construction Manager, and upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety: (1) take possession of the site and all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor; (2) accept assignment of subcontracts pursuant to Paragraph 5.4; and (3) finish the Work by whatever reasonable method the Owner may deem expedient.

(App.156.) Plainfield acknowledges a contractual obligation to provide Paden with seven days written notice and an architect's certification, but nonetheless asserts

that partial summary judgment was improvidently granted to Paden. Plainfield argues alternatively: there is a genuine issue of material fact as to whether an architect's certificate was rendered or, if no certificate was rendered, Plainfield could still exercise a common law right to recover from Paden for breach of contract. According to Plainfield, the trial court's partial summary judgment order "deprived the jury of the opportunity to determine the question of fact as to whether Kenneth A. Sebree & Associates, Inc. had certified that good cause existed to terminate Paden from the Project." Appellant's Brief at 17.

"Architect" is defined in Article 4.1.1 of General Conditions in the Contract: The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

(App.135.) The designated materials identify Sebree & Associates, Inc. as the architect of the Project. The materials also include an example of an architect's certification—that executed as a prerequisite to contractor payment—indicating that the certification is to be of standard form and signed. Moreover, the Contract requires that the certification be explicit: sufficient cause exists for the Owner to terminate the Contract for cause. Paden and the Sureties designated evidence that there had been no architect certification of good cause for termination as required by the Contract. (App.303.)

■ Plainfield contends that it need not have responded by designation of materials in order to withstand the grant of partial summary judgment, because it properly had no burden to negate Paden's defense.[7] Nonetheless, Plainfield insists that a genuine issue of material fact exists after its submission of an Affidavit from Steve Craney. Craney averred that he held an associate degree in Architectural Engineering Technology as well as a bachelor's degree in Construction Technology/Supervision Technology, and was the project coordinator for Sebree & Associates, Inc. on the Project. On September 26, 2003, Craney had sent an e-mail to a representative of Plainfield, a copy of which was attached to his Affidavit. The e-mail states:

This individual [Paden's project manager] and his company continue to multiply the challenges with completion of the project. We need to seriously consider having a meeting with our team and the attorneys in order to reach agreement on what is to be done. The additional months that have been added to the schedule, as a result of the lack of performance on the part of Paden, is causing or possibly will be causing everyone (contractors, Summit, Sebree, etc.) to request addition[al] money to cover the

7. We disagree with Plainfield's contention that the trial court employed an improper summary judgment standard. Paden established, *prima facie*, via its designation of materials, that no (contractually required) architect's certification was procured by Plainfield prior to Paden's termination from the Project. It was then incumbent upon Plainfield to designate some evidence to reveal a genuine issue of material fact as to whether an architect's certification was procured prior to Paden's termination. See *Estate of Verdi ex rel. Verdi v. Toland*, 733 N.E.2d 25, 28 (Ind. Ct.App.2000) (observing that, if the moving party meets the requirements of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, the burden shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial), *trans. denied.*

many hours that were not budgeted! Is this the point where we agree to call an end to this situation? I feel we really need to talk! Thanks!

(App.973.)

■ We consider this e-mail communication in the light most favorable to Plainfield in order to discern whether a genuine issue of material fact precludes partial summary judgment. *Yates*, 888 N.E.2d at 847. The sender alludes to termination, but does not purport to be rendering an architect's certification of good cause for termination. He does not claim to be an architect, nor does he claim that he was rendering an architect's certification on behalf of Sebree, the designated architect for the Project. In his affidavit, Craney merely avers that he had "expressed [his] agreement with terminating Paden from the Project." (App.971.) In short, he never claimed to have rendered an architect's certification as required by the Contract. Accordingly, the designated material does not reveal a genuine issue of material fact in this regard. The absence of the architect's certificate not in dispute, we turn to Plainfield's argument that the omission is not fatal to its pursuit of a common law claim against Paden.

■■ Standard architectural contracts have long provided for termination and takeover by the owner under some circumstances; however, "forfeitures are not favored" and a condition precedent "must be strictly complied with in order to justify the drastic action contemplated." *White v. Mitchell*, 30 Ind.App. 342, 65 N.E. 1061, 1062 (1903). "Where the parties to a building contract have made the certificate of the architect a condition precedent to the assertion of a right thereunder, the party claiming such right must show the performance of the condition, a reason for noncompliance therewith, or a waiver thereof." *Id.* at 1062–63. *See also Hoyt v.*

*Pomeroy*, 87 Conn. 41, 86 A. 755 (1913) (the architect certification must be "exact" and "conform to the conditions in the contract relied upon").

■ Under a contract giving the architect the power to determine questions arising over the construction of the building, such as diligent performance of the work and whether the owner is justified in terminating the contract and taking possession of the materials for the purpose of completing the building, the architect must expressly certify that the owner is warranted in taking over the contract and the materials. *Oden Const. Co. v. Helton*, 218 Miss. 41, 65 So.2d 442, 445 (1953). In *Oden*, letters from an architect expressing displeasure with the work did not constitute compliance with the express certification requirement. *See id.* An owner who fails to give contractually-required notice, upon receipt of a proper architect's certificate, may not rightfully rescind the contract and take charge of the work. *American–Hawaiian Eng'g & Const. Co. v. Butler*, 165 Cal. 497, 133 P. 280, 286 (1913).

In *White*, this Court considered the following provision, Article 5 in a standard contract recommended for general use by the American Institute of Architects and the National Association of Builders:

Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or *failure being certified by the architects*, the owner shall be at liberty, after two days' written notice to the contractor, to provide any such labor or material, and to deduct the cost thereof from

any money then due or thereafter to become due to the contractor under this contract; and, *if the architects shall certify that such refusal, neglect, or failure is sufficient ground for such action,* the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises, and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but, if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or finishing the work, and any damages incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties.

65 N.E. at 1062 (emphasis added.) The *White* Court determined that the contract made the certificate of the architect a condition precedent to the right of the owner to terminate the employment, and also noted "the universal strictness with which this provision of the contract has been uniformly construed[.]" *Id.* at 1063. *See also Korbly v. Loomis,* 172 Ind. 352, 88 N.E. 698 (1909) (reiterating "[w]hen the parties to a building contract have made the certificate of an architect or engineer a condi-

tion precedent to the assertion of a right thereunder, such provisions are valid, and the party claiming such right must show by proper allegations the performance of the conditions, a valid reason for noncompliance therewith, or a waiver thereof."), *overruled in part on other grounds by Moore–Mansfield Const. Co. v. Indianapolis, N.C. & T. Ry. Co.,* 179 Ind. 356, 101 N.E. 296 (1913).

Plainfield contends that the holding of *White* is inapposite, because the contract language therein included no reference to retention of common law rights. Specifically, Plainfield points to the following provision of the Contract at issue here:

"When any of the above reasons exist, the Owner, after consultation with the Construction Manager, and upon certification by the Architect that sufficient cause exits to justify such action, may *without prejudice to any other rights or remedies of the Owner* and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor."

(App.156.) (emphasis added.) Plainfield contends that the phrase "without prejudice to any other rights or remedies" ensures that Plainfield did not give up any common law right to address a breach of contract by Paden. Also, Article 13.4.1 provides that duties and obligations, and rights and remedies under the Contract shall be in addition to those imposed or available by law.

Plainfield relies upon *Ingrassia Constr. Co. v. Vernon Township Bd. of Educ.,* 345 N.J.Super. 130, 784 A.2d 73 (2001). The construction contract at issue in *Ingrassia* provided, like the instant Contract:

When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to jus-

tify such action, may *without prejudice to any other rights or remedies of the Owner* and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor[.]

*Id.* at 77 (emphasis added.) The construction contract was terminated by the Board after certification by an architect licensed in Canada but not in the United States. *See id.* The *Ingrassia* Court observed, "The problem then is to determine the consequences that flow from a termination based on a defective architect's certificate." The Court concluded,

Those consequences are limited to depriving the owner of any finality, presumption of correctness, or obligation of judicial deference that would otherwise attach to a proper architect's certification. Accordingly, the parties are left to their common-law causes of action for breach of contract, plaintiff being free to assert and attempt to prove that it was wrongfully terminated, and the Board being free to assert and attempt to prove that the termination[ was justified by reason of the material breaches that motivated it.... Plaintiff urged and the trial court agreed that a proper certificate is a condition precedent to the owner's right to terminate at all. Clearly that is not so. To be sure, a proper certificate is a condition precedent to according the owner the degree of finality the certificate represents. To that extent, a proper certificate is a condition precedent to the owner's right of termination under the contract. But it is not a condition precedent to the owner's exercise of its common-law right of termination subject to the normal and traditional burden of proof of a material breach from which it would be largely exempted by a proper certificate. This is clear from the contract documents themselves. Thus, section 13.4.1 of AIA

Document A201 expressly provides the "[d]uties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law." And indeed, section 14.2.2, the termination-on-certificate clause, itself provides that the termination procedure therein prescribed is "without prejudice to any other rights or remedies of the Owner...." We think it plain that an owner who terminates the contract because it believes that the contractor has materially breached the contract cannot be deemed to have forfeited its right to prove the breach and the resultant damages simply because it has disadvantaged itself by not following the contractual termination procedures and has thereby lost the benefit of the conclusiveness of the certificate. That is particularly so where the contract itself, as here, has expressly preserved common-law remedies.

*Id.* at 77–81.

Paden and the Sureties respond that *Ingrassia* is not well-reasoned and has not been followed by other jurisdictions. We find *Ingrassia* to be something of an anomaly, a case in which one party substantially performed its obligation to procure an architect's certification, but the certification fell short because of the origin of licensure, and the trial court essentially applied equitable principles. We do not find it instructive in our review of the contract before us.

 We believe the more well-reasoned view to be that a party to such a contract retains his common law rights to the extent that the exercise of those rights is not in conflict with the duties specified in his contract. Here, in order to harmon-

ize all provisions of the Contract, we conclude that Plainfield did not forfeit a common law right to seek redress for breach of contract but contractually agreed to comply with specified duties in order to invoke that right. This interpretation does not render the contractual requirements for notice and architect certification superfluous or nullified. We are mindful that a party may not "seek both to bring a claim under a contract and disavow a term therein." *TWH, Inc. v. Binford,* 898 N.E.2d 451, 454 (Ind.Ct.App.2008).

Upon non-performance of a contract term by Paden, Plainfield could still pursue a breach of contract action, as its common law rights were not extinguished by the Contract. However, Plainfield's exercise of its right was constrained by compliance with certain conditions precedent—notice and architect's certification. The architect's certification not having been rendered, a condition precedent failed, and Paden is entitled to partial summary judgment upon Plainfield's claim for breach of contract.

## II. *Partial Summary Judgment— Sureties*

 Section 3 of the Performance Bond contains certain conditions precedent to Plainfield's recovery from the Sureties, providing:

If there is no Owner Default, the Surety's obligation under this Bond *shall arise after:*

3.1. The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor's Default and has requested

and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2. The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraphs 3.1; and

3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

(App.236.) (emphasis added.)

Admittedly, Plainfield did not provide written notice to the Sureties prior to termination of Paden's services or permit the Sureties to elect which of their five contractual options would be exercised in an effort to mitigate their damages.[8] However, Plainfield argues that a contract of insurance should be construed against the insurer and that the Sureties suffered no actual prejudice.[9] The Sureties respond

---

8. Also, in oral argument, Plainfield admitted that the Contract balance had not been tendered.

9. Plainfield has argued that its election to have Hoosier Steel, Inc. continue working on the Project as a sub-contractor was the most cost-effective measure available after Paden's termination, and thus the Sureties suffered no prejudice. In essence, Plainfield contends that it made the best election possible on behalf of the Sureties. Additionally, Plainfield has asserted that, had the Sureties been

that the surety contract at issue is not a typical contract for insurance against a loss, but rather is a standard construction industry contract explicitly providing for notice and mitigation opportunity before a "takeover" of a project. They assert that the vast majority of other jurisdictions have treated notice and certification as binding conditions precedent,[10] and also point out that *White*, previously discussed herein, was an Indiana case doing precisely that.

 A contract of surety creates a tripartite contractual relationship between the party secured, the principal obligor, and the party secondarily liable. *Meyer v. Bldg. & Realty Serv. Co.*, 209 Ind. 125, 133, 196 N.E. 250, 253 (1935). A surety is one who undertakes to do that which the principal is bound to do in the event the principal fails to comply with an obligation. *Id.* While insurance contracts are in many respects similar to surety contracts, there is a "wide difference between the two kinds of contracts." *Id.* "Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event; whereas a contract of suretyship is one to answer for

the debt, default, or miscarriage of another[.]" *Id.* 209 Ind. at 134, 196 N.E. at 253–54. A surety's liability must be measured by the strict terms of his contract. *In re Kemper Ins. Companies*, 819 N.E.2d 485, 490 (Ind.Ct.App.2004), *trans. denied.*

Here, Plainfield and the Sureties entered into a contractual relationship whereby the Sureties' obligations would be triggered only upon the performance of specified conditions precedent. Also, the Sureties were contractually entitled to elect one of five options for mitigation of their damages. However, Plainfield admittedly did not comply with formal termination requirements relative to the Sureties or afford the Sureties to elect a course of action. As to the Sureties, Plainfield essentially concedes that conditions precedent failed but claims that the Sureties should be compelled to show actual prejudice arising from Plainfield's omissions.

In its discussion of actual prejudice, Plainfield has directed our attention to *Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997 (Ind.2009), *reh'g denied:*

As we recently observed in *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1271–72 (Ind.2009), Ameri-

---

afforded the opportunity to exercise one of their five contractual options, the obvious election would have been to deny liability (because the Sureties have presented argument that Paden was not at fault). Notwithstanding the speculative assertions, Plainfield concedes that the Sureties were contractually entitled to exercise an option.

**10.** *See, e.g., U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 51 (2d Cir.2004) (stating "before a surety obligation under the Bond can mature, the obligee must comply with any conditions precedent" and "Paragraph 3 of the [AIA A312] Bonds contained a number of conditions precedent to the Sureties' obligations under the Bonds."); *Enter. Capital. Inc. v. San–Gra Corp.*, 284 F.Supp.2d 166, 179 n. 21 (D.Mass.2003) (noting that other courts had consistently interpreted the

language in [Paragraph 3 of] the Performance Bond—"the Surety's obligation under this Bond shall arise after"—to indicate the listing of conditions precedent); *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 276 F.Supp.2d 999, 1017 (D.N.D.2003), *aff'd*, 420 F.3d 751 (8th Cir.2005) (finding the requirements of Paragraph 3 to be conditions precedent to the surety's bond performance); *Bank of Brewton, Inc. v. Int'l Fid. Ins. Co.*, 827 So.2d 747, 753 (Ala.2002) (owner required by performance bond to give notice and satisfy other conditions precedent); *Spotsylvania County Sch. Bd. v. Seaboard Sur. Co.*, 243 Va. 202, 415 S.E.2d 120, 122 (1992) (school board's right to terminate was conditioned upon certification by the Architect that sufficient cause existed to justify such action).

can jurisdictions fall into three groups on the need to establish prejudice from late notice. Some hold that prejudice is irrelevant to enforcement of a late notice defense. Others require an insurer asserting this defense to demonstrate actual prejudice, and a third group creates a rebuttable presumption of prejudice in favor of the insurer. As *Dreaded* noted, *id.* at 1272, Indiana is generally placed in the third category, with a citation to *Miller v. Dilts,* 463 N.E.2d 257 (Ind. 1984).

*Id.* at 1004–5. The *Tri–Etch* Court held that, while a finding of prejudice is required to void coverage, late notice was presumptively prejudicial to an insurer. *Id.* at 1005. As such, *Tri–Etch* is not helpful to Plainfield's position. In essence, even if the Sureties are to be regarded as insurers asserting a late notice defense, *Tri–Etch* would dictate that the lack of timely notice was presumptively prejudicial. The Sureties designated evidence of lack of written notice and architect certification. In light of Plainfield's failure to come forward with a designation of evidence to rebut the presumed prejudice, the Sureties need not show actual prejudice to prevail upon their partial summary judgment motion. *See also Sheehan Constr. Co. v. Continental Cas. Co.,* 938 N.E.2d 685, 689 (Ind.2010) (observing that, one prejudice is presumed, the burden is on the insured to establish some evidence that prejudice did not occur in the particular situation), *reh'g denied.*

██ The parties herein entered into a contract assigning duties, rights, remedies and obligations. In the event of alleged failure by the contractor, Paden, to adequately perform, the owner, Plainfield, was permitted (upon satisfaction of specified prerequisites) to seek to hold the Sureties liable. Even so, the Sureties—as opposed to Plainfield—were accorded the right to elect among specified options. We may not rewrite clear and unambiguous language of a contract to alter the obligations of the parties. *Von Hor,* 867 N.E.2d at 278. As such, we will not extend the coverage of the performance bond beyond that for which the parties have contracted. Nor will we re-allocate the opportunity for mitigation of damages bargained for by the Sureties and agreed to by Plainfield.

In short, Plainfield is bound by the terms of the contract into which it entered and the Sureties are liable for no more than the contract provisions would dictate. *Kemper,* 819 N.E.2d at 490. Plainfield did not satisfy conditions precedent to recovery from the Sureties. The Sureties are entitled to partial summary judgment upon Plainfield's claim for payment under the performance bond.

### Conclusion

Paden has demonstrated the absence of a genuine issue of material fact and its entitlement to partial summary judgment as a matter of law upon Plainfield's contractual claim for damages against Paden. The Sureties have demonstrated the absence of a genuine issue of material fact and their entitlement to partial summary judgment as a matter of law upon Plainfield's contractual claim for payment under a performance bond. Accordingly, the trial court properly granted partial summary judgment to Paden and to the Sureties.

Affirmed.

NAJAM, J., and DARDEN, J., concur.