## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas B. O'Farrell
McClure | O'Farrell
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lynette (Pierce) Loud, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Yair Martinez-Ruiz, <br> *Appellee-Respondent.* | May 25, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1611-DR-2683 <br><br> Appeal from the Marion Superior Court <br><br> The Hon. James B. Osborn, Judge <br><br> The Hon. Marshelle Dawkins Broadwell, Magistrate <br><br> Trial Court Cause No. <br> 49D14-1503-DR-8631 |

**Bradford, Judge.**

# Case Summary

Lynette Pierce (now Lynette Loud, hereinafter "Mother") and Yair Martinez-Ruiz ("Father") were married on May 13, 2011, and separated in January of 2015. As of May 31, 2016, the two children born of the marriage were five and two years old, and Mother had primary physical and legal custody. In April of 2016, Mother filed a notice of intent to relocate with the Children to Texas with a new boyfriend she intended to marry.

In April and May of 2016, the trial court held a final hearing on the dissolution and Mother's relocation request. Following the hearing, the trial court issued its order, which dissolved the parties' marriage and denied Mother's relocation request. The magistrate who presided over the dissolution signed the dissolution order and the subsequent denial of Mother's motion to correct error, but a trial judge did not. Mother contends that the dissolution order is invalid because it was not signed by a trial judge and the trial court abused its discretion in denying her relocation request and in determining the parties' childcare expenses. Because we conclude that Mother has waived any challenge to the authority of the magistrate to issue the dissolution order but that the trial court abused its discretion in determining child support, we affirm in part, reverse in part, and remand for further proceedings.

# Facts and Procedural History

[3] Mother and Father were married on May 13, 2011, and separated in January of 2015. On March 17, 2015, Mother petitioned for dissolution of her marriage with Father. The Children were born in November of 2010 and December of 2013. On July 21, 2015, Mother petitioned for an order for protection, which the trial court granted *ex parte* the next day. On September 17, 2015, the parties agreed to a preliminary order that addressed the protective order and preliminary dissolution issues. The preliminary order provided, in part, that (1) Mother and Father would share custody of the Children with Mother having final decision-making authority, (2) Father would have parenting time each weekend except for the first weekend of each month and with one of the Children each Wednesday while that child was in preschool, (3) parenting-time exchanges would occur at the Jordan YMCA child watch in such a way that the parents would not meet, and (4) Father would pay $65.00 per week in child support and $75.00 per month for preschool tuition.

[4] Following an incident involving the parties and Mother's boyfriend in the parking lot of the Jordan YMCA on October 24, 2015, Father did not exercise parenting time until at least February 17, 2016. At a hearing on February 24, 2016, the trial court ordered that Father's parenting time be resumed pursuant to the preliminary order, with the exception of the Wednesday visitation with one of the Children, which was eliminated due to Father's work schedule. Also on that date, Mother moved for a final dissolution hearing, which the trial court set for April 19, 2016. On April 14, 2016, Wife filed a notice of intent to move residence, stating that she planned to move to Fort Hood, Texas, with the

Children in July of 2016. On April 19, 2016, Father filed his objection to Mother's relocation request and a motion for modification of custody.

[5] On April 19 and May 31, 2016, the trial court held hearings addressing the dissolution, Mother's petition to relocate, and Father's motion for modification of custody. At the hearing on April 19, 2016, the parties stipulated, *inter alia*, that Mother would have primary physical custody of the Children subject to Father's parenting time, all exchanges would continue to occur at the Jordan YMCA child watch with the assistance of a mutually-acceptable third party, and the protective order would stay in place but that Father could contact the Children through Mother.

[6] Also on April 19, 2016, Mother testified that it was her intent to marry her boyfriend, who was in the Army and stationed at Fort Hood, after her divorce from Father became final. On May 31, 2016, Mother testified that she had worked at the Cheesecake Factory for ten years in Indianapolis but that she would resume her lapsed Amway[1] business if she relocated to Texas. Father testified that his gross income was approximately $400.00 per week and that he could not afford to travel to Texas to see the Children.

---

[1] Mother testified that Amway is a "multilevel marketing company" and that her business would involve selling everything from "skin care to sport nutrition to, um, household cleaners … all from the comfort of [her] living room." Tr. II pp. 101-02.

[7]     On August 29, 2016, the trial court issued its dissolution order and ruling on Mother's petition to relocate. The order included the following findings of fact:

21.    Wife is requesting leave of Court to relocate to Texas with the children. Husband objects to the relocation of the children and requests the Court to modify custody in the event of Wife's move.

22.    Wife's reason for her relocation is to move in with her romantic companion. Wife testified her intent is to re-marry upon her divorce from Husband. Wife's romantic companion is in the military and currently stationed at Ft. Hood, Texas; Wife acknowledge[s] Wife's romantic companion could be ordered to relocate at any time.

23.    Wife testified that Wife intends to quit her job of ten years in order to move to Texas and join her romantic companion, then operate an Amway multi-level marketing business from her home. Wife and the children do not have any family members in the area where Wife wants to relocate in Texas. Wife stated she would not move to Texas if the children were not allowed to relocate with her.

24.    Husband objects to Wife relocating with the children. Husband asserted concerns about the children's education, lack of family members in the area, potential lack of stable housing, an inability of the children to travel without adults to accompany them, Husband's inability to travel due to potential restrictions on his ability to leave the state and cost associated with travel to Texas, or midway between Indiana and Texas.

25.    Wife's average gross weekly income is $569.

26.    Husband's gross weekly income is $520.

27.    Wife's weekly work-related childcare expense is $90. Husband's weekly work-related childcare expense is $60.

28.    Wife claimed both children on her 2014 federal and state income taxes and her 2015 federal and state income taxes.

Husband asserts Husband was entitled to claim at least one child on his 2015 income taxes. Wife asserts Husband was not entitled to claim either children due to Husband's child support arrearage. The Court finds that Husband had a child support arrearage at the time the children were claimed for the 2015 taxes.

29. Wife and Husband dispute whether Husband owes Wife money for Husband's cell phone. The Court does not find that Husband owes Wife any money for the Sprint cell phone bill.

Appellant's App. Vol. II pp. 14-15.

[8] The trial court's order included the following conclusions:

4. The parties have no property to divide.

5. With respect to debts asserted by each party, the Court does not find Husband liable for Wife's cell phone bill and the Court does not find Wife liable for Husband's tax obligation.

6. The parties shall share joint legal custody, equally sharing in major decision-making authority as to the parties' minor children.

7. The parties are not required to communicate by exchanging a calendar; however, communication regarding the children should occur through nonverbal approaches, such as texting, or-preferably-email. Both parties are required to make the other party aware of the minor children's scheduled activities.

8. Wife shall have primary physical custody and Husband shall have parenting time according to the Indiana Parenting Time Guidelines, which shall apply to the parties in all respects, but for Husband's parenting time being:

a. The second and third weekend of each month, Father shall have parenting time from noon Saturday until 9:00 a.m. Monday; the fourth weekend of each month, from noon Saturday until 6:00 p.m. on Sunday; in the event of a fifth weekend, from noon on Saturday until 6:00 p.m. on Sunday.

b. All exchanges of the minor children are to take place at the Jordan YMCA child watch. The party with the children shall drop them off at least fifteen minutes before the exchange time. On Sunday evenings, Father is to exchange the children with another adult of whom both parties approve. The Court discourages romantic companions of the parties from participating in exchanges.

9. The Court does not approve the relocation of the minor children from Indiana. The Court finds that such relocation would not be for legitimate reasons and further would not be in the best interests of the parties' minor children. If Wife chooses to relocate to Texas, Husband shall have primary physical custody, and Wife shall have Indiana Guideline parenting time with the minor children where distance is a major factor.

10. Husband shall pay child support in the amount of $54/week through INSCCU via Income Withholding Order. Child support payments may not be made in cash or via "in-kind" exchanges. Wife shall continue to pay the babysitter during her work shifts and Husband shall pay the babysitter during his work shifts. Wife shall pay the first $758.16 annually in uninsured medical expenses for the children with any remaining accounts paid 48% by Husband and 52% by Wife per the attached CSOW and the "6% Rule". Husband shall pay $75 per month towards [the oldest child's] school tuition.

11. Beginning with 2016 State and Federal Taxes, Husband shall be allowed to claim [the younger child] each year going forward; beginning with 2016 Federal and State Taxes, Wife shall be allowed to claim [the older child] each year going forward.

12. The marriage of the parties is dissolved and they are each returned to the status of unmarried persons.

Appellant's App. Vol. II pp. 16-18. The order was signed by Marion Superior Court Magistrate Marshelle Dawkins Broadwell but was not signed by a judge. On October 19, 2016, the order denying Mother's motion to correct error was again signed by Magistrate Broadwell but not by a judge. Mother did not challenge the authority of Magistrate Broadwell to issue the dissolution decree in her motion to correct error.

# Discussion and Decision

### *Standard of Review*

[9] In the present case, Father has not submitted a Brief of Appellee. As a result, "[i]nstead of imposing upon this court the burden of controverting arguments advanced for reversal, [we] have long applied a less stringent standard of review with respect to showings of reversible error when the appellee fails to file a brief." *Johnson Cty. Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct. App. 1985). Birth Mother need only prove prima facie error to win reversal. *Id.* (citing *Ind. State Bd. Of Health v. Lakeland Disposal Serv., Inc.*, 461 N.E.2d 1145, 1145 n.1 (Ind. Ct. App. 1984)). "In this context, 'prima facie'

means at first sight, on first appearance, or on the face of it." *Id.* (quoting

*Harrington v. Harrington*, 142 Ind. App. 87, 88, 233 N.E.2d 189, 191 (1968)).

[10] In this case, the trial court entered findings of fact and conclusions thereon. Our review of findings and conclusions in such cases is well settled:

> Pursuant to Indiana Trial Rule 52(A), we do not "set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Where, as here, the findings and conclusions are entered sua sponte, "the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial." *Sexton v. Sedlak,* 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), *trans. denied.*

*Miller v. Carpenter*, 965 N.E.2d 104, 108–09 (Ind. Ct. App. 2012).

# I. Authority of the Magistrate to Issue the Dissolution Order

[11] Mother contends that the dissolution decree and order on relocation and custody issues, as well as the trial court's denial of her motion to correct error, must be set aside because there are no indications that a judge approved them. Indiana Code section 33-23-5-5 provides that

> A magistrate may do any of the following:
> (1) Administer an oath or affirmation required by law.
> (2) Solemnize a marriage.
> (3) Take and certify an affidavit or deposition.
> (4) Order that a subpoena be issued in a matter pending before the court.

(5) Compel the attendance of a witness.

(6) Punish contempt.

(7) Issue a warrant.

(8) Set bail.

(9) Enforce court rules.

(10) Conduct a preliminary, an initial, an omnibus, or other pretrial hearing.

(11) Conduct an evidentiary hearing or trial.

(12) Receive a jury's verdict.

(13) Verify a certificate for the authentication of records of a proceeding conducted by the magistrate.

(14) Enter a final order, conduct a sentencing hearing, and impose a sentence on a person convicted of a criminal offense as described in section 9 of this chapter.

(15) Enter a final order or judgment in any proceeding involving matters specified in IC 33-29-2-4 (jurisdiction of small claims docket) or IC 34-26-5 (protective orders to prevent domestic or family violence).

(16) Approve and accept criminal plea agreements.

(17) Approve agreed settlements concerning civil matters.

(18) Approve:

   (A) decrees of dissolution;

   (B) settlement agreements; and

   (C) any other agreements;

of the parties in domestic relations actions or paternity actions.

[12]    Moreover, Indiana Code section 33-23-5-8 provides that, subject to exceptions not implicated in this case, "a magistrate … does not have the power of judicial mandate [and] may not enter a final appealable order unless sitting as a judge pro tempore or a special judge." Finally, Indiana Code section 33-23-5-9 provides that, unless following a criminal trial or guilty plea hearing, "a magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. The court shall enter the final order."

[13]     As the Indiana Supreme Court has explained:

> Magistrates may enter final orders in criminal cases, I.C. §§ 33-23-5-5(14), -9(b), but otherwise "may not enter a final appealable order unless sitting as a judge pro tempore or a special judge." I.C. § 33-23-5-8(2). Instead, they may only "report findings," while "[t]he court shall enter the final order." I.C. § 33-23-5-9(a).

*In re Adoption I.B.*, 32 N.E.3d 1164, 1173 n.6 (Ind. 2015).

[14]     Mother is correct that, pursuant to rather clear statutory authority, the dissolution decree and order on relocation and custody issues, and the trial court's denial of her motion to correct error, should have been approved by a trial judge. That said, as Mother concedes, she did not object on this ground in the trial court, and this failure decides the issue. As the Indiana Supreme Court has explained, "[t]he proper inquiry for a reviewing court when faced with a challenge to the authority and jurisdiction of a court officer to enter a final appealable order is first to ascertain whether the challenge was properly made in the trial court so as to preserve the issue for appeal." *Floyd v. State*, 650 N.E.2d 28, 32 (Ind. 1994). The *Floyd* court continued:

> [I]t has been the long-standing policy of this court to view the authority of the officer appointed to try a case not as affecting the jurisdiction of the court. Therefore, the failure of a party to object at trial to the authority of a court officer to enter a final appealable order waives the issue for appeal. We conclude that it is improper for a reviewing court to dismiss an appeal on these grounds where no showing has been made that the issue was properly preserved. Instead, the reviewing court should deny relief on grounds of waiver.

*Id.* Even though the dissolution order was not signed by a judge, Mother did not raise the issue in her motion to correct error (in which event, one imagines, the deficiency would almost certainly have been quickly remedied) and so has waived it for our consideration. Much as the Indiana Supreme Court did recently, however, "[w]e trust the court will observe this necessity on remand." *In re Adoption I.B.*, 32 N.E.3d at 1173 n.6.

## II. Relocation

[15] Mother contends that the trial court abused its discretion in denying her request to relocate with the Children to Fort Hood, Texas. We review custody modifications for an abuse of discretion. *In re Paternity of J.J.*, 911 N.E.2d 725, 728 (Ind. Ct. App. 2009), *trans. denied.* The Indiana Supreme Court "has expressed a preference for granting latitude and deference to our trial judges in family law matters … because of trial judges' unique, direct interactions with the parties face-to-face." *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011) (citations and quotations omitted). We do not substitute our judgment for that of the trial court if evidence and legitimate inferences therefrom support the trial court's judgment, which serves the interests of finality in custody matters. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

[16] When a parent files a notice of intent to relocate, the nonrelocating parent may object by moving to modify custody or to prevent the child's relocation. Ind. Code §§ 31-17-2.2-1(b); 31-17-2.2-5(a). When this objection is made, "[t]he relocating individual has the burden of proof that the proposed relocation is

made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(c). If the relocating parent shows good faith and a legitimate reason, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-2.2-5(d).

> (b) Upon [the filing of a notice of intent to move] of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grandparent visitation order, or child support order. The court shall take into account the following in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order:
>     (1) The distance involved in the proposed change of residence.
>     (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
>     (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.
>     (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
>     (5) The reasons provided by the:
>         (A) relocating individual for seeking relocation; and
>         (B) nonrelocating parent for opposing the relocation of the child.
>     (6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1(b).

[17]    "Other factors affecting the best interest of the child[,]" Ind. Code § 31-17-2.2-1(b)(6), are the factors provided by our legislature in the Indiana Code, and include:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parent or parents;
>     (B) the child's sibling; and
>     (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
>     (A) home;
>     (B) school; and
>     (C) community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.

Ind. Code § 31-17-2-8.

[18]    Our supreme court has held that, even where there has not been a substantial change in one or more of the statutory factors affecting the best interests of the child set forth in Section 31-17-2-8, a change in custody may be ordered due to relocation of a parent. *In re Paternity of J.J.*, 911 N.E.2d 725, 729 (Ind. Ct. App. 2009 )(citing *Baxendale,* 878 N.E.2d at 1256-57). A trial court must, however, consider all of the statutory factors enumerated in the relocation statute codified at Subsection 31-17-2.2-1(b). *Id.* at 731. Moreover, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must

positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002) (citations and quotation marks omitted).

[19] We conclude that the evidence presented in this case does not positively require reversal of the trial court's denial of Mother's request to relocate with the Children. As an initial matter, the trial court concluded that Mother did not carry her burden of showing a legitimate reason for relocation and that she was acting in good faith. We conclude, however, that relocation for the purpose of creating a family with a current or future spouse is generally sufficient to establish a legitimate reason for relocation and good faith, and is in this case. *See In re the Paternity of X.A.S.,* 928 N.E.2d 222, 229 (Ind. Ct. App. 2010) (explaining that a father who had recently married a member of the U.S. Navy whose ship was docked in California and who wished to relocate to California to live with his spouse presented a good faith and legitimate reason for the relocation), *trans. denied.* That said, "'[t]he Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court.'" *Thomas v. Thomas*, 923 N.E.2d 465, 470-71 (Ind. Ct. App. 2010) (quoting *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied.*).

[20] The trial court heard and considered evidence regarding the distance involved in the proposed relocation and the and hardship and feasibility of maintaining parenting time. The trial court noted that Mother intended to relocate with the Children to Texas, which Mother testified would be an approximately

seventeen- to eighteen-hour drive from Indianapolis. Mother also proposed Memphis, Tennessee, as an exchange point, which would still be an eight-hour drive for Father. Father testified that, due to a pending criminal charge, he was not certain that he could even leave the State of Indiana and that, even if he could leave, visitation with the Children in Texas would be "extremely hard" and "difficult" and that he would not be able to afford to visit them. Tr. Vol. II p. 110.

[21] Moreover, although not specifically cited by the trial court, the record contains evidence that Mother has, at times, thwarted Father's visitation with the Children. Father testified that even without full custody, "she does whatever she wants, then if she has [full custody], she's going to disappear from the world." Tr. Vol. II p. 66. Father testified that Mother had kept the Children from him "for months" and that, in the event of relocation, "[s]he's not going to follow the rules." Tr. Vol. II p. 66.

[22] As for Mother's reasons for relocation, Mother testified that she intended to marry her boyfriend upon her divorce from Father and relocate with him to near Fort Hood, Texas, where he was stationed. Mother acknowledged, however, that her boyfriend was a "career soldier" who could be relocated at any time. Tr. Vol. II p. 101. Although Mother testified that she has family nearby Fort Hood, she testified that her sister, in fact, lived six hours away in Arkansas, which supports the trial court's finding that Wife and the Children had no family members in the area. Father also objected to the move, citing uncertainties regarding the Children's education. Mother testified that she did

not know the name of the school the older child would attend, nor had she visited it. The trial court also noted that Mother would be leaving a job she had had for ten years if she relocated to Texas and would rely, in part, on her dormant Amway business for income. Mother testified that the Children have a pediatrician that Mother "just really like[s]" in Indiana but that she does not know who their doctor would be in Texas. Tr. Vol. II p. 96.

[23] Under the circumstances, we cannot say that the record positively requires reversal of the trial court's disposition. The trial court heard evidence that relocation would be a significant hardship on Father and evidence suggesting a distinct possibility that Mother might be somewhat less than fully cooperative with visitation. The trial court was permitted to conclude that there were questions about the long-term stability of Mother's situation in Texas, both with regard to the possibility of further relocation and Mother's work situation. Mother points to evidence that would tend to support the granting of her request to relocation with the Children. This, however, is an invitation to reweigh the evidence, which we will not do. *See Baxendale*, 878 N.E.2d at 1257-58.

# III. Child Support

[24] A trial court's calculation of child support is presumptively valid. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind.2015). We review decisions regarding child support for an abuse of discretion. [*Lovold v. Ellis*, 988 N.E.2d 1144, 1149-50 (Ind. Ct. App. 2013)]. An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* at 1150.

> When reviewing a decision for an abuse of discretion, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

*Mitten v. Mitten*, 44 N.E.3d 695, 699 (Ind. Ct. App. 2015).

Mother contends that the trial court abused its discretion in calculating child support after finding that her weekly child-care expense is $90.00 and that Father's is $60.00. We agree with Mother that this finding is unsupported by the evidence submitted to trial court. On April 19, Mother testified that the Children's babysitter charged $30.00 per shift. On May 31, 2016, however, Mother testified that the Children's babysitter had recently increased her rate to $40.00 per shift, and the trial court's calculations are apparently based on the $30.00 rate. Consequently, we remand with instructions to recalculate the parties' childcare obligations accordingly.

# Conclusion

We conclude that Mother waived any challenge she might have had to the magistrate's authority to issue the dissolution decree by failing to object on that ground in the trial court. We further conclude that the trial court did not abuse its discretion in denying Mother's request to relocate to Texas with the Children. Finally, we reverse the trial court's order regarding child support, as it was based, in part, on findings regarding childcare costs that are not supported by evidence in the record.

[27]     We affirm in part, reverse in part, and remand for further proceedings consistent with this decision.

Baker, J., and Riley, J., concur.